The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| LINDA SHORT, OLIVIA PARKER, ELIZABETH SNIDER, JENNIFER DIPARDO, ANTHONY DIPARDO, SEANE RONFELDT and JAMES TWIGGER, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>       v.<br><br>HYUNDAI MOTOR AMERICA, INC., HYUNDAI MOTOR COMPANY, KIA MOTORS AMERICA, INC., and KIA MOTORS CORPORATION,<br><br>                    Defendants. | No. 2:19-cv-318-JLR<br><br>AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION<br><br>JURY DEMAND |

TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................ 1

II.     PARTIES ..................................................................................................... 9

        A.      Defendants ....................................................................................... 9

        B.      Plaintiffs ........................................................................................ 10

III.    JURISDICTION AND VENUE ............................................................... 16

IV.     FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS ................... 17

        1.      2011-2013 Hyundai Tucson 2.4-liter and 2012-2016 Kia Soul
                1.6- and 2.0-liter Engines Have Serious Safety-Related Defects. .......... 17

        2.      Hyundai and Kia Knew or Should Have Known About These
                Defects. ........................................................................................ 25

        3.      Defendants' Actions Have Caused Class Members Significant
                Harm. ............................................................................................ 37

V.      CLASS ACTION ALLEGATIONS ......................................................... 38

        A.      Class Definitions ........................................................................... 38

        B.      Class Certification Requirements ................................................. 40

VI.     EQUITABLE TOLLING ......................................................................... 44

        A.      Discovery Rule .............................................................................. 44

        B.      Fraudulent Concealment ............................................................... 44

        C.      Estoppel ......................................................................................... 46

VII.    CLAIMS FOR RELIEF ........................................................................... 46

        COUNT I  FRAUD BY CONCEALMENT (Common Law) ...................... 46

        COUNT II  IMPLIED AND WRITTEN WARRANTY Magnuson-Moss
                Warranty Act (15 U.S.C. §§ 2301 *et seq.*) ........................................ 50

        COUNT III VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION
                LAW (Cal. Bus. & Prof. Code § 17200, *et seq.*) ................................ 51

        COUNT IV VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING
                LAW (Cal. Bus. & Prof. Code § 17500, *et seq.*) ................................ 53

COUNT V VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT
(Cal. Civ. Code § 1750 *et seq.*).................................................................. 55

COUNT VI VIOLATIONS OF THE SONG-BEVERLY CONSUMER
WARRANTY ACT FOR BREACH OF IMPLIED WARRANTIES (Cal.
Civ. Code §§ 1791.1 & 1792) ........................................................ 58

COUNT VII VIOLATIONS OF THE OHIO CONSUMER SALES
PRACTICES ACT (O.R.C. §§ 1345.01, *et seq.*)................................. 59

COUNT VIII VIOLATIONS OF THE OHIO DECEPTIVE TRADE
PRACTICES ACT (O.R.C. §§ 4165.01, *et seq.*)................................. 62

COUNT IX VIOLATIONS OF THE IMPLIED WARRANTY OF
MERCHANTABILITY (O.R.C. §§ 1302.27 and 1310.19) ............... 65

COUNT X VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE
PRACTICES AND CONSUMER PROTECION LAW (73 P.S. §§ 201-
1, *et seq.*).................................................................................. 66

COUNT XI VIOLATIONS OF THE IMPLIED WARRANTY OF
MERCHANTABILITY (13 Pa. C.S.A. § 2A212)................................. 69

COUNT XII VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT (Wash. Rev. Code §§ 19.86.010, *et seq.*)........................ 70

COUNT XIII BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY (Wash. Rev. Code §§ 62A.2-314 and 62A.2A-
212) ......................................................................................... 73

COUNT XIV VIOLATION OF THE WEST VIRGINIA CONSUMER CREDIT
AND PROTECTION ACT (W. Va. Code §§ 46A-1-101, *et seq.*).................... 74

COUNT XV BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (W. Va. Code §§ 46-2-314 and 46-2A-212)............... 77

VIII.    PRAYER FOR RELIEF ................................................................. 78

IX.    DEMAND FOR JURY TRIAL ........................................................... 79

Plaintiffs bring this action on behalf of themselves and all others similarly situated, against the Defendants collectively referred to as "Hyundai"—Hyundai Motor America, Inc., and Hyundai Motor Company—and the Defendants collectively referred to as "Kia"—Kia Motors America, Inc., and Kia Motors Corporation. Hyundai owns a controlling interest in Kia and directs its operations. Plaintiffs allege the following based upon information and belief, the investigation of counsel, and personal knowledge as the factual allegations pertaining to themselves.

## I.    INTRODUCTION

1.    This case arises out of Hyundai and Kia's longtime failure to disclose or remedy several serious safety-related defects of design and manufacturing in the engines of the 2011-2013 Hyundai Tucson and the 2012-2016 Kia Soul (the "Class Vehicles"). Despite Defendants' knowledge of the defects, no recall was announced for any of the Class Vehicles until February 2019, despite having defects that create a clear safety hazard, making them unfit to drive—namely, that the engines could suddenly stall while driving at speed, *then burst into flames*.

2.    Hyundai and Kia knew or should have known about these safety-related defects before these vehicles were ever offered for sale, having conducted rigorous testing in accord with federal and state laws, in addition to their testing at their California "Proving Grounds," which they have conducted since at least 2005.[1] But Hyundai and Kia failed to correct or disclose these dangerous defects to their customers, claiming instead, for example, that "[t]here's one thing

---

[1] Kim Dong-Jin, *Vice Chairman of Hyundai Motor Company Local Officials Celebrate the Innovative Proving Ground* (Jan. 26, 2005), https://www.hyundainews.com/en-us/releases/393 (last visited Aug. 19, 2019).

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 1

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

missing from every Hyundai. Worry."[2]



But worry—particularly worry about safety—is at the heart of Plaintiffs' claims. All but one of the Plaintiffs are currently justifiably worried that their vehicles could, at any time, suddenly stall, while driving at speed, then burst into flames. The only one of the Plaintiffs who is not worried that his or her car could burst into flames is Plaintiff James Twigger, but that is only because his vehicle—a 2014 Kia Soul equipped with the 2.0-liter "Nu" engine—already did:



---

[2] https://www.hyundaiusa.com/new-thinking/quality.aspx, available at
https://web.archive.org/web/20130116092630/https://www.hyundaiusa.com/new-thinking/quality.aspx (last visited Aug. 19, 2019).

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 2

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Plaintiff Twigger, unfortunately, is not alone in having undergone such a horrifying experience, as evidenced by the various news articles and NHTSA complaints detailed below, as well as by the fact that Defendants have previously recalled various models equipped with the exact same engines for similar or identical defects as those alleged herein.

3.      Despite what Hyundai and Kia knew or should have known about the safety-related defects present in Class Vehicles, Defendants failed to disclose the defects for years, leading to hundreds or possibly even thousands of engine failures, sudden stalls, and fires.

4.      Only recently—after years of failing to disclose serious safety defects—have Hyundai and Kia begun to recall certain of these vehicles. But even then, there is a vast distance between a recall and a reliable fix, as thousands of consumers know all too well.

5.      In the case of the Tucson Class Vehicles, Defendants acknowledged in a 2019 letter to owners and lessees of 2010-2013 Tucson vehicles that the defect relates to an "important safety matter" that could "lead to a high-speed stall, increasing the risk of a crash," and "could also increase the risk of an engine fire." Hyundai did not offer any actual repair at the time, instead exhorting consumers to wait patiently. This means that Hyundai offered only a vague promise of a future repair and then only six to nine years after the dangerously defective vehicles entered the stream of commerce. The letter amounted to pie in the sky for thousands of consumers stuck in limbo, knowing their vehicle has potentially fatal flaws, but powerless to act on this knowledge. Adding insult to injury, as described more fully below, the recall that was finally announced will be inadequate to remedy the problem or to compensate the customers who spent years bearing the risk that their cars might suddenly stall while driving or, worse, burst into flames.

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 3

6.      Moreover, the proposed recalls do not go far enough. The proposed recall of the Kia Soul covers 375,000 vehicles equipped with one engine—the 1.6-liter "Gamma" engine—but does not address Kia Soul vehicles equipped with what is, on information and belief, a second defective engine, the 2.0-liter "Nu" engine. The 2.0-liter engine—as Plaintiff Twigger's experience demonstrates—is similarly subject to fire risk.

7.      For the Hyundai Tucson, Hyundai finally announced a repair in July 2019, but it is woefully inadequate. Hyundai proposes to check the oil pan for evidence of leakage, and only if such evidence is present, replace and reseal the oil pan; Hyundai also proposes to install a new oil pressure switch (implying both that the previous switch was defective in that it did nothing to prevent engine damage due to oil leakage, and that further oil leakage resulting in low pressure is expected). For those whose engines have already been damaged in the six to nine years they have been on the road with the defect unremedied, this recall will do nothing, and those consumers with damaged engines will be made to continue driving while at risk of engine failure or fire. At best, the fix provides the possibility that the new oil sensor will warn drivers when oil pressure becomes dangerously low but before the engine stalls or bursts into flames. This kind of inadequate fix is not uncommon for Hyundai and Kia—they've been attempting similarly inadequate fixes for other vehicles defective GDI engines. The failures of those inadequate repairs are the subject of ongoing litigation elsewhere.

8.      Not only have numerous Hyundai and Kia vehicles been previously recalled for serious defects, which is concerning in and of itself, but the companies' track record of actually fixing the vehicles that it recalls is also problematic. In the past, Hyundai and Kia have recalled numerous other models with GDI engines to repair defects that could lead to engine failures and fires, but the failures and fires have recurred despite the recalls. Hyundai and Kia are recalling

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

many of those vehicles yet again for the same problems. Consumers have every reason to suspect that a recall for the vehicles at issue in this Complaint—which were not part of the previous recalls but appear to suffer from similar defects—at this late date will not be an adequate solution.

9.      Further, these consumers also have every reason to suspect that now that the problems have become known and publicized, the market values of their vehicles have decreased significantly. These consumers did not get the vehicles they bargained for at the time of purchase, have gone years without an adequate repair, have driven their vehicles for years without Defendants disclosing that they had serious safety defects, may have suffered diminished resale value, and cannot now be made whole merely by recalling and repairing the vehicles.

10.      According to the National Highway Traffic Safety Administration (NHTSA), Hyundai is recalling 120,000 Tucsons, and Kia is recalling over 378,000 Souls with the 1.6-liter "Gamma" engine, each of which suffers from a serious defect. On information and belief, there are another roughly 300,000 Souls equipped with the 2.0-liter "Nu" engine that are also defective but are not currently the subject of any proposed recall. The affected vehicles ("Class Vehicles") are as follows:

| Model Years | Model and Defective Engine | Likely or Reported Safety-Related Defect(s) | Number of Affected Vehicles |
|---|---|---|---|
| 2012-2016 | Kia Soul 1.6-liter "Gamma" | Engine suddenly stalling at speed and bursting into flame because, according to Kia, the catalytic converter is susceptible to overheating, ultimately causing connecting rods to fracture engine block. | 378,967 |
| 2012-2016 | Kia Soul 2.0-liter "Nu" | Engine suddenly stalling at speed and bursting into flame when connecting rods fracture engine | 300,000+ |

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

| | | block due to catalytic converter susceptible to overheating, debris left in engine during manufacturing, and/or oil starvation and lubrication failure. | |
|---|---|---|---|
| 2011-2013 | Hyundai Tucson 2.0-liter "Theta II" | Engine damage that can result in sudden stall at speed and/or engine fire as a result of leaking, defective oil pan seals and defective oil pressure switch. | 120,000+ |

11.     Over 375,000 2012-2016 model year Kia Soul vehicles equipped with the 1.6-liter "Gamma" engine are being recalled due to a design defect wherein the catalytic converter can overheat and become damaged, resulting in abnormal combustion in the engine, damage to the pistons and resulting connecting rod failure. These catastrophic failures can result in sudden stalls during normal driving and engine fires. Kia's proposed recall and repair involves changing the catalytic converter software to a reprogrammed version used on 2017 and up vehicles, meaning that Kia has known about—but concealed and failed to remedy—this defect since at least 2016. Moreover, due to the rigorous regulatory certification process for emissions components, it is unlikely that this repair could actually be effectuated without the involvement, consent, and testing of environmental regulators, which could take time and money for Defendants to complete.

12.     Over 120,000 2011-2013 model year Hyundai Tucson SUVs are being recalled due to a manufacturing defect wherein, due to improper sealing during engine production, oil leaks can lead to engine damage, sudden stalls during normal operation, and/or engine fires. As of the filing of this lawsuit, Hyundai professed not to know—nine years after the first of these vehicles entered production—the cause of this defect. Several months later, Hyundai has proposed a woefully inadequate fix.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

13.     Finally and surprisingly, Kia has still not recalled 300,000+ Kia Souls equipped with the 2.0-liter "Nu" engine despite numerous reports of similar engine failures, stalls, and fires, such as the one suffered by Plaintiff Twigger.

14.     Hyundai and Kia alike have failed to disclose and/or have concealed these defects for years, despite hundreds of consumer complaints of spontaneous catastrophic engine failures, stalls, and fires. In the case of the Kia Souls with Nu engines, Kia continues to conceal the defects. The recalls now being conducted were forced by a NHTSA investigation that grew in part out of concern over the timeliness and scope of Hyundai's prior recalls for defects that could lead to engine fires in vehicles equipped with similar engines. Congress eventually summoned Kia and Hyundai executives to appear and testify about these defects, but these executives refused to appear.

15.     Despite years of knowledge, Hyundai and Kia are still failing to provide information to their consumers—consumers who are stuck driving unsafe vehicles that may suddenly stall or burst into flames at any time. As of this filing, for the Tucson repair announced nine years after the vehicles entered production and seven months after the initial announcement that some recall would be forthcoming, concerned consumers will see only the below graphic if they look up the recall on Hyundai's recall website:

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 7

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384







16.     Because of the inherent engine defects and Defendants' concealment of the same, Plaintiffs and other owners and lessees of the Class Vehicles unknowingly assumed the risk of catastrophic engine failures and fires—and concomitant risk of injury or death—resulting from defects that Hyundai and Kia knew or should have known about before the vehicles were ever sold; learned of or should have learned of from the hundreds or thousands of engine failures, fires, and complaints from consumers that followed; and concealed and failed to remedy for years.

17.     As a result of Defendants' conduct, Plaintiffs and other owners and lessees of the Class Vehicles overpaid at the time of purchase or lease for vehicles that were actually defective, have or will suffer the costs associated with extensive repairs, have owned and leased vehicles that were less valuable than those for which they bargained, and have seen their vehicles likely

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 8

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

lose market value. Defendants still have not provided to Plaintiffs the vehicles bargained for, and even a future repair would not restore purchasers and lessees to the benefits of ownership for which they bargained and that they would have received but for the defect.

## II.    PARTIES

### A.    Defendants

18.    Defendant **Hyundai Motor America, Inc.,** (HMA) is a manufacturer and distributor of new motor vehicles under the Hyundai brand and is incorporated and headquartered in the state of California. Its principal place of business is located at 10550 Talbert Avenue, Fountain Valley, California. Hyundai Motor America distributes, markets, leases, warrants, and oversees regulatory compliance and warranty servicing of Hyundai brand vehicles through a network of over 800 dealers throughout the United States from its headquarters in California. Hyundai Motor America also creates and distributes the warranties and other written materials that accompany the sale and lease of Hyundai-branded vehicles throughout the United States, and makes decisions concerning warranty coverage of customer vehicles when problems arise.

19.    Defendant **Hyundai Motor Company** (HMC) is a multinational auto manufacturer with its headquarters in Seoul, South Korea. Hyundai Motor Company controls and operates its subsidiaries in the Hyundai Motor Group, which includes Hyundai Motor America, Inc., as well as Kia Motors Corporation and Kia Motors America, Inc. Activities of the Hyundai Motor Group include the design, manufacture, and testing of the engines and vehicles at issue in this Complaint. Revenue from the distribution and sale of Hyundai-branded vehicles in the United States flows from Hyundai Motor America, Inc., to its corporate parent, Hyundai Motor Company.

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 9

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

20.     Defendant **Kia Motors America, Inc.,** (KMA) is a manufacturer and distributor of new motor vehicles under the Kia brand and is incorporated and headquartered in the state of California. Its principal place of business is located at 111 Peters Canyon Road, Irvine, California. Kia Motors America, Inc. markets, leases, warrants, and oversees regulatory compliance and warranty servicing of Kia-brand vehicles through a network of over 700 dealers throughout the United States from its headquarters in California. KMA also creates and distributes the warranties and other written materials that accompany the sale and lease of Kia-branded vehicles throughout the United States, and makes decisions concerning warranty coverage of customer vehicles when problems arise.

21.     Defendant **Kia Motors Corporation** (KMC) is a multinational auto manufacturer with its headquarters in Seoul, South Korea. It is the corporate parent of Kia Motors America, Inc. and is a part of the Hyundai Motor Group. Defendant Hyundai Motor Company holds a controlling stake in Kia Motors Corporation. Revenue from the distribution and sale of Kia-branded vehicles in the United States flows from KMA to its corporate parent, KMC.

**B.     Plaintiffs**

22.     Plaintiff **Linda Short** is a citizen of Washington state who resides in Redmond. She leased a new 2013 Hyundai Tucson equipped with the 2.4-liter "Theta II" engine on or about March 30, 2013, and then purchased the vehicle at the end of the lease from Hyundai of Kirkland in Kirkland, Washington, at which time the vehicle was still covered by the manufacturer's warranty. Had Defendants disclosed the safety-related defect and risk of fire or stalling at the time of lease and purchase, Plaintiff would not have leased or purchased the vehicle or would have paid considerably less for it. Plaintiff regularly services the vehicle but is now concerned

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

about driving it due to the dangers resulting from the defect and believes that its market value has been diminished as a result of the defect.

23.    Plaintiff **Olivia Parker** is a citizen of California who resides in Joshua Tree. In September 2018 she purchased a used 2014 Kia Soul equipped with the 1.6-liter "Gamma" engine, from Palm Springs Kia in Cathedral City, California, for approximately $15,000. Had Defendants disclosed the safety-related defect and risk of fire or stalling been known at the time of purchase, Plaintiff would not have purchased the vehicle or would have paid considerably less for it. Plaintiff has serviced the vehicle regularly but is now concerned about driving it due to the dangers resulting from the defect and believes that its market value has been diminished as a result of the defect.

24.    Plaintiff **Elizabeth Snider** is a citizen of Washington state who resides in Shelton, Washington. In June 2012 she purchased a new 2012 Kia Soul equipped with the 2.0-liter "Nu" engine from West Hills Kia in Bremerton, Washington, for approximately $21,000. Had Defendants disclosed the safety-related defect and risk of fire or stalling at the time of purchase, Plaintiff would not have purchased the vehicle or would have paid considerably less for it. Plaintiff has serviced the vehicle regularly but is now concerned about driving it due to the dangers resulting from the defect and believes that its market value has been diminished as a result of the defect.

25.    Plaintiffs **Jennifer** and **Anthony DiPardo** are citizens of Pennsylvania who reside in Carnegie, Pennsylvania. The DiPardos purchased a new 2014 Kia Soul equipped with the 2.0-liter "Nu" engine from Baierl Kia in Wexford, Pennsylvania, for approximately $23,000. Had Defendants disclosed the defect and risk of sudden stalling or fire at the time of purchase, Plaintiffs would not have purchased their vehicle or would have paid considerably less for it.

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 11

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Plaintiffs worry about driving their vehicle due to the dangers resulting from the defect and believe that its market value has been diminished as a result of the defect.

26.    Plaintiff **Seane Ronfeldt** is a citizen of Ohio who resides in Toledo. In November 2016, he purchased a new 2016 Kia Soul equipped with the 1.6-liter "Gamma" engine from Taylor Kia in Toledo, Ohio, for approximately $19,000. Had Defendants disclosed the safety-related defect and risk of fire or stalling at the time of purchase, Plaintiff would not have purchased the vehicle or would have paid considerably less for it. On Saturday, July 20, 2019, Plaintiff Ronfeldt was driving his Kia Soul at approximately 70 MPH on an interstate highway in Michigan when the engine shuddered and lost all power. He maneuvered the vehicle onto an exit ramp and then, with assistance from other people, pushed it into a nearby parking lot. The vehicle was towed to Kia of Lansing, Michigan, which confirmed that the engine had blown a connecting rod through the engine casing. Kia suggested replacing the engine but refused to do this work under warranty or otherwise compensate Plaintiff Ronfeldt for replacing the engine or any other repairs. Plaintiff Ronfeldt's insurance company, however, upon inspection, concluded that the incident was a result of a manufacturing or design defect.

27.    Because Plaintiff Ronfeldt concluded that Kia's charges for replacing the engine with a new engine were exorbitant without warranty coverage, and because Plaintiff still owed substantial amounts on the vehicle and relied on it for transportation, he had a local mechanic install a used 1.6-liter "Gamma" engine. Plaintiff services the vehicle regularly but is worried about driving it due to the dangers resulting from the engine defect, especially since he has experienced the engine failure and connecting rod breakage once already—fortunately without a resultant engine fire. He believes that his vehicle's market value has been substantially diminished as a result of the defect and his vehicle's repair and incident history.

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 12

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

28.    Plaintiff **James Michael Twigger** is a citizen of West Virginia who resides in Charleston, West Virginia. In July 2014, he purchased a new 2014 Kia Soul Plus equipped with the 2.0-liter "Nu" engine for approximately $19,500. Had Defendants disclosed the safety-related defect and risk of fire or stalling at the time of purchase, Plaintiff would not have purchased the vehicle or would have paid considerably less for it. On July 1, 2017, while driving on I-64, a major highway, his vehicle's engine spontaneously stopped working, so he moved the car to the shoulder of the highway. Moments later, the engine started smoking, ignited into flames, and burned, destroying the vehicle:



AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 13

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384





AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 14

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

29.     The vehicle was declared a total loss by his insurer:



AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 15

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384



30.     Plaintiff Twigger believes that the fire was caused by an engine defect that resulted in a connecting rod failure that led to a hole in his engine block through which oil leaked, ultimately touching hot engine components and sparking this destructive fire.

### III.     JURISDICTION AND VENUE

31.     This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), because the putative class numbers more than 100, the aggregate amount in controversy exceeds $5,000,000 excluding costs and interest, and at least one plaintiff and one defendant are citizens of different states. This Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367.

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 16

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

32.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. Defendants have marketed, advertised, and sold the affected vehicles, including those owned by Plaintiffs Short and Snider, and otherwise conducted extensive business, within this District.

## IV.     FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

33.     Hyundai Motors Company, Hyundai Motor America, Kia Motors Corporation, and Kia Motors America Inc. manufactured and sold defective engines and then failed to disclose the defects for years, concealing the true nature of the engines and vehicles from consumers, who—unbeknownst to them—were driving vehicles that had serious safety-related defects because they could stall at any moment and burst into flames.

**1.     2011-2013 Hyundai Tucson 2.4-liter and 2012-2016 Kia Soul 1.6- and 2.0-liter Engines Have Serious Safety-Related Defects.**

**a.     2012-2016 Kia Soul 1.6-liter engines suffer from safety-related defects that can result in catastrophic failures, stalls, and engine fires.**

34.     In February 2019, Kia Motors America, Inc. (KMA) issued a recall for 378,967 **Soul** vehicles from the 2012 to 2016 model years, all of which have 1.6-liter direct injection gasoline engines. In these engines, the catalytic converter, which reduces pollutants in exhaust emissions, is susceptible to overheating due to—according to Kia—a programming error. When the catalytic converter overheats, abnormal combustion in the engine can result. This can damage the pistons' connecting rods, potentially fracturing the engine block and causing an oil leak. Connecting rod failure, damaged pistons, and a cracked engine block can all cause sudden and

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 17

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

catastrophic engine failure during normal driving, and the resulting leakage of oil onto hot engine parts can result in engine fires.[3]

35.     On November 16, 2018, KMA and Kia Motors Corporation (KMC), (collectively Kia) submitted a response to Defect Petition (DP18-003) for the Kia Soul vehicle and did not identify or report any potential defect trends. Between November 16 and December 5, 2018, KMC analyzed Soul engine claim data and identified a relationship between catalytic converter damage and engine fires. Upon KMC's request, KMA collected data throughout December for an evaluation of defect trends in suspect vehicles. Between January 7 and February 20, 2019, KMC engineers traveled to the United States to inspect 120 collected, potentially hazardous parts. They identified the defect and confirmed the risk of sudden engine stalls and fires. More than three months after Kia's investigation began, KMC decided to conduct a safety recall due to potential risk of fire on February 21, 2019.[4]

36.     This investigation and recall amount to too little, too late. Kia was aware of the dangers of an overheating catalytic converter in these engines since 2016. The Safety Recall Report for the February 21, 2019 recall discloses that "[t]he [Electronic Control Unit] ECU logic for the Catalytic Overheating Protection (COP) was changed and improved to prevent overheating of the catalytic converter on July 27, 2016, beginning with the start of the 2017 MY Soul production. However, the 2016 MY Soul production ended on August 11, 2016 with the previous COP ECU logic."[5]

---

[3] Letter to Mr. J.S. Park: Overheated Catalytic Converter May Damage Engine for NHTSA Recall No. 19V120000 (Feb. 27, 2019), https://static.nhtsa.gov/odi/rcl/2019/RCAK-19V120-4114.pdf (last visited April 29, 2019).
[4] 2012-2016 MY Soul Engine Control Unit (ECU) Logic Chronology for NHTSA Recall No. 19V-120 (Feb. 22, 2019), https://static.nhtsa.gov/odi/rcl/2019/RMISC-19V120-6176.pdf (last visited April 29, 2019).
[5] Part 573 Safety Recall Report for NHTSA Recall No. 19V-120 (Feb. 22, 2019), https://static.nhtsa.gov/odi/rcl/2019/RCLRPT-19V120-1711.PDF (last visited April 29, 2019).

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

37.    In April 2019, Kia provided a service bulletin to dealer service departments concerning the procedure for the proposed recall.[6] This document explains the defect as follows:

> Under certain conditions, the catalytic converter may become damaged due to overheating caused by an excessive increase of exhaust gas temperatures. If the catalytic converter is damaged, substrate particles can enter the engine combustion chamber and cause abnormal engine combustion. Continuous abnormal engine combustion can result in damage to one or more of the engine's pistons which can cause piston rod breakage, potentially puncturing the engine block allowing engine oil to escape. Engine oil that contacts a hot exhaust surface may result in a fire.

The service bulletin instructs the service department to check diagnostic codes stored in the vehicle's onboard diagnostic system and, depending on what diagnostic codes are present, do one of three things: reprogram the ECU (euphemistically called "perform ECU logic improvement" in the service bulletin), replace the catalytic converter and then reprogram the ECU, or perform a compression test on the engine. If the engine passes the compression test, the catalytic converter is replaced and the ECU reprogrammed. If it fails, the entire engine short block and numerous additional engine components are to be replaced, along with the catalytic converter and the ECU reflash. The following flow chart was provided in the service bulletin[7]:



---

[6] Safety Recall Campaign SC176 Remedy Instructions and Technical Service Bulletin (April 2019), https://static.nhtsa.gov/odi/rcl/2019/RCRIT-19V120-5381.pdf (last visited April 29, 2019).
[7] Id.

38.      There are several problems with this proposed recall, all of which will likely take time and expense to resolve, if the problems are even resolvable. One problem is that it is not clear that the ECU reflash complies with state and federal emissions regulations because it is not the emissions-related programming with which the vehicle was originally certified for emissions compliance. It will likely take time and money for Defendants to get the ECU reflash compliant and certified. Another problem is that the bulletin indicates that Kia expects that some engines will have already experienced damage serious enough to require engine block replacement, and plans to replace the defective parts with new, undamaged stock of the same defective parts. Kia's and Hyundai's history with related GDI engines leads Plaintiffs to question whether replacing damaged parts with newer undamaged parts of the same design will solve anything beyond the very short term. Kia and Hyundai have previously recalled over 2 million vehicles with GDI engines due to risk of similar engine failures and fires. Among these, numerous engines were replaced only to experience similar failures again because the replacements were also defective. This further raises the question of whether the source of the fires really is the catalytic converter, rather than an engine design or manufacturing defect similar to those experienced by owners and lessees of other GDI vehicles.

39.      Rather than Defendants' proposed piecemeal approach of merely replacing damaged parts with parts that are also defective, Plaintiffs would rather their vehicles receive new, non-defective engines. To develop such engines, or to determine how such engines would be integrated within older model cars like Class Plaintiffs', would likely take considerable time and money, while Plaintiffs and Class members would still be stuck driving dangerously defective vehicles. If Defendants cannot provide engines that do not contain defective parts, they should buy the Class Vehicles back.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**b.    2012-2016 Kia Soul 2.0-liter engines also suffer from safety-related defects that can result in catastrophic failures, stalls, and engine fires.**

40.    Like the 1.6-liter Kia Soul and numerous other Kia models before it, on information and belief, the 2.0-liter version suffers from a defect or defects that can result in catastrophic failures, stalls, and engine fires.

41.    For the 2012-2016 model years, Kia sold at least 300,000 2.0-liter Souls in the United States.

42.    Kia's prior recalls involve manufacturing and design defects that result in oil starvation or lubrication failures, or from metal debris left in the engine during manufacturing. When these conditions occur, the connecting rods between the engine pistons and crankshaft can eventually fail and puncture the engine block. When this occurs, engine oil or uncombusted fuel can leak out of the punctured engine block, contact hot engine components, and ignite engine fires. Even if the engine block is not punctured, connecting rod and rod bearing failures can result in sudden, catastrophic engine failures or stalls at speed, which can be just as dangerous as an engine fire. Kia's proposed recall blames an overheating catalytic converter for this type of failure in the 1.6-liter engines, and in the past Kia and Hyundai have blamed manufacturing problems with oil seals or with metal debris left in engine components for this type of failure in prior recalls of 2.0- and 2.4-liter engines.

43.    On information and belief, and as demonstrated by the experiences of Plaintiff Twigger and other class members whose 2.0-liter Kia Souls have suffered engine failures and fires, these vehicles, too, suffer from a dangerous defect similar in type and result to the defects in the 1.6-liter Soul and/or the 2.0- and 2.4-liter engines previously recalled in other models. However, Kia has failed to announce any recall or repair for these vehicles.

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 21

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

### c.    2011-2013 Hyundai Tucsons suffer from safety-related defects that can result in catastrophic failures, stalls, and engine fires.

44.    Manufacturing defects leading to oil pan leaks in 2011-2013 Hyundai Tucson vehicles have caused serious risk of harm in the form of spontaneous engine stalling and engine fire.

45.    Alongside the Kia Soul 1.6-liter recall described above, Hyundai issued a recall of at least 120,000 Tucson SUVs from the 2011 to 2013 model years due to potential engine pan oil leaks caused by insufficient sealing between the oil pan and the engine block.[8] If unaddressed, the engine oil pan leakage may cause engine damage that leads to increased risk of fire or a stalled engine at high speeds.

46.    Two Hyundai Tucson Safety Recall Reports were submitted on February 5, 2019 and February 15, 2019. Both reports identified that vehicles produced from March 1, 2010, to December 31, 2012, needed to be recalled for safety purposes, but the later Safety Recall Report specified that potentially hazardous Tucson vehicles were equipped with 2.4-liter "Theta II" engines—the same engine involved in 2015 and 2017 recalls of other vehicles for engine fire defects, some of which were recalled yet again in 2019 because the fires could recur even after recall repairs were conducted. Based on information NHTSA received from HMC, the recall of Tucson vehicles was required to minimize exposure to risk of stalling or fire.[9]

47.    Despite the fact that this dangerous defect persists in vehicles manufactured as long ago as 2010, and despite several failed recalls of other models equipped with the same and

---

[8] Part 573 Safety Recall Report for NHTSA Recall No. 19V063000 (Feb. 15, 2019), https://static.nhtsa.gov/odi/rcl/2019/RCLRPT-19V063-6813.PDF (last visited Mar. 2, 2019).
[9] Part 573 Safety Recall Report for NHTSA Recall No. 19V063000 (Feb. 5, 2019), https://static.nhtsa.gov/odi/rcl/2019/RCLRPT-19V063-6690.PDF (last visited Mar. 2, 2019); *Id.*

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

related engines over the past several years, as of March 2019 Hyundai *still* had not identified the cause of the defect or proposed a repair for it, merely announcing that there will be some form of recall for the 2011-2013 Tucson. Unlike owners of other models with the same defective engine, owners of these vehicles, like Plaintiff Short, have been driving them for up to nine years with a risk of sudden stalls or fires that was known to Hyundai. Hyundai's interim notice to owners—received by Plaintiff Short in April 2019 for her 2013 model year Tucson—refers to the defect as an "important safety matter" but does not provide any solution or any timeline for a recall, and merely thanks owners for their patience as if they had any choice.

48.    In July 2019, Hyundai finally released a service bulletin for this recall, and planned to begin informing owners in August. Like its previous recalls for fire-related defects in GDI engines, the bulletin demonstrates that this repair is unlikely to permanently solve the problem and does nothing to compensate owners who have driven dangerously defective vehicles for years. The TSB confirms the nature and seriousness of the defect:[10]

**Description:** Certain 2011-2013 MY Tucson vehicles equipped with 2.4L engines may have an engine oil leak from the seal between the oil pan and engine block which, if left unrepaired and operated over time, could eventually lead to engine damage. A damaged engine could lead to a high-speed stall and, in limited cases, a vehicle fire. This bulletin describes the procedure to install an updated oil pressure switch and, if necessary based on vehicle inspection, an oil pan.

49.    The proposed repair consists of inspecting the oil pan for evidence of previous leaks—leaks which, as the TSB states, could have already resulted in engine damage while the vehicle was operated in the six to nine years since it was sold new—and, if and only if evidence of previous leaks appears, replacing and resealing the oil pan. By definition, because Hyundai failed to issue any recall or service bulletin in the six to nine years since these vehicles were sold

---

[10] Hyundai TSB 19-01-012H, July 2019.

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 23

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

new, any vehicle with oil leaks has been "left unrepaired and operated over time," the circumstances under which the TSB confirms that engine damage could occur and result in a "high-speed stall" or "vehicle fire." There is no provision in the recall for inspecting the engine for damage. Nor is there any provision for resealing or replacing oil pans on vehicles on which evidence of oil leakage is not visible, such as if the vehicle's undercarriage has been recently cleaned or sprayed with rust protectant—both common practices. The TSB also calls for replacing the oil pressure switch with a new design, indicating both that the previous design was defective in that it did nothing to prevent engine damage and that Hyundai perceives a continuing risk of oil leakage that could cause engine damage.

50.     All told, this recall is far too little, far too late, and because it comes so late and fails to address any existing engine damage resulting from the defect, it does nothing to prevent stalls and fires in any Tucson that has already suffered an oil leak as a result of the defect. It also fails to prevent leakage and damage in any vehicle that does not present visible evidence of prior leakage at the time of inspection—*i.e.*, any vehicle that has been thoroughly cleaned or recently treated with rust protectant, as is common in much of the United States. At a minimum, Hyundai should replace and reseal the oil pan on every Tucson, inspect every engine, and replace any engine that shows signs of damage due to oil starvation, or else buy back the vehicles. The recall also fails to provide any warranty coverage for future failures that result from damage accrued over the past six to nine years. As Plaintiff Ronfeldt experienced when his Soul threw a rod, Hyundai and Kia have a history of refusing warranty coverage for catastrophic failures resulting from defects they knew about.

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 24

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

### 2. Hyundai and Kia Knew or Should Have Known About These Defects.

51.     For each of these defects, Hyundai and Kia's durability testing should have identified the issues before these vehicles entered the market. But the Defendants have also been on notice for years about the defects, through NHTSA complaints and warranty claims, as well as prior recalls of vehicles equipped with the same or similar engines. But Defendants did not disclose any of the defects and have done nothing but conceal them until very recently. The proposed recalls now follow investigations prompted by Defendants' failure to adequately remedy *another* set of defects that can cause engine fires.

### a. Hyundai and Kia Have a Pattern of Defects That Can Result in Engine Failure and Fires.

52.     Hyundai and Kia are familiar with engine defects and have a track record of failing to adequately remedy them.[11] This is the first time that the Class Vehicles have been subject to recalls for engine defects that could result in stalls or fires, but the companies have previously recalled other vehicles with GDI engines for similar defects.

53.     One such recall was in September 2015, after prompting by the NHTSA. Hyundai issued Recall No. 15V568000 for 470,000 MY 2011-2012 Hyundai Sonata vehicles manufactured at Hyundai Motor Manufacturing Alabama that were equipped with 2.0-liter and 2.4-liter "Theta II" GDI engines due to reported stalling events and numerous engine-related warranty claims.[12] At the time, Kia did not recall any vehicles, though some shared the same "Theta II" engines.

---

[11] *See, e.g.*, Erza Dyer, *How Kia Got Good*, PopularMechanics.com (Jan. 4, 2018), https://www.popularmechanics.com/cars/car-technology/a14416136/how-kia-got-good/ (last visited Aug. 19, 2019) (noting that Kia Sportage engines were "always blowing up," providing a "lucrative side job" to one mechanic, working to "keep . . . Kias on the road").

[12] Part 573 Safety Recall Report Chronology for NHTSA Recall No. 15V568000, (Sept. 10, 2015), https://static.nhtsa.gov/odi/rcl/2015/RCLRPT-15V568-9490.PDF (last visited Mar. 1, 2019), at 2.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

54.     The defect and its consequences were described in NHTSA's Safety Recall Report from September 2015 as follows:

> Hyundai has determined that metal debris may have been generated from factory machining operations as part of the manufacturing of the engine crankshaft during the subject production period. As part of the machining processes, the engine crankshaft is cleaned to remove metallic debris. If the debris is not completely removed from the crankshaft's oil passages, it can be forced into the connecting rod oiling passages restricting oil flow to the bearings. Since bearings are cooled by oil flow between the bearing and journal, a reduction in the flow of oil may raise bearing temperatures increasing the potential of premature bearing wear. A worn connecting rod bearing will produce a metallic, cyclic knocking noise from the engine which increases in frequency as the engine rpm increases. A worn connecting rod bearing may also result in illumination of the oil pressure lamp in the instrument cluster. If the vehicle continues to be driven with a worn connecting rod bearing, the bearing can fail, and the vehicle could stall while in motion.[13]

55.     In a now-familiar pattern, Hyundai did not recall nearly enough vehicles. In March 2017, Hyundai expanded its initial recall to 572,000 MY 2013-2014 Sonata and Santa Fe Sport vehicles with 2.0-liter and 2.4-liter GDI "Theta II" engines for the same manufacturing debris-related issues, describing the defect as follows:

> The subject engines may contain residual debris from factory machining operations, potentially restricting oil flow to the main bearings and leading to premature bearing wear. A worn connecting rod bearing will produce a cyclic knocking noise from the engine and may also result in the illumination of the oil pressure lamp in the instrument panel. Over time, the bearing may fail and the vehicle could lose motive power while in motion.[14]

56.     That same day, Kia recalled 618,000 MY 2011-2014 Optima, 2012-2014 Sorento and 2011-2013 Sportage vehicles, all of which had the "Theta II" engine as well.[15]  Just like

---

[13] *Id.* at 1.

[14] Part 573 Safety Recall Report for NHTSA Recall No. 17V226000 (Mar. 31, 2017), available at https://static.nhtsa.gov/odi/rcl/2017/RCLRPT-17V226-4558.pdf  (last visited Mar. 1, 2019), at 1.

[15] David Shepardson, *Kia, Hyundai expand U.S. engine fire recalls by 534,000 vehicles*, Reuters (Feb. 28, 2019), https://www.reuters.com/article/us-kia-motors-recall/kia-hyundai-expand-u-s-engine-fire-recalls-by-534000-vehicles-idUSKCN1QH2EB (last visited Mar. 1, 2019).

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Hyundai's recall, the potentially restricted oil flow to the main bearings could lead to premature bearing wear and eventual bearing failure, causing the engine to stall.

> Metal debris may have been generated from factory machining operations as part of the manufacturing of the engine crankshaft which may not have been completely removed from the crankshaft's oil passages during the cleaning process. In addition, the machining processes of the crankpins caused an uneven surface roughness. As a result, the metal debris and uneven surface roughness can restrict oil flow to the bearings, thereby increasing bearing temperatures causing premature bearing wear. A worn connecting rod bearing will produce a cyclic knocking noise from the engine and may also result in the illumination of the engine warning lamp and/or oil pressure lamp in the instrument panel. If the warnings are ignored and the vehicle is continued to be driven, the bearing may fail and the vehicle could stall while in motion.[16]

57.    The delay in expanding the recall to all affected vehicles between 2015 and 2017 caught the attention of NHTSA, which launched an investigation in May of 2017 into concerns that both companies' recalls should have been issued earlier. Nearly two more years went by as Hyundai and Kia kept receiving reports of engine fires in vehicles containing Theta II engines.

58.    While NHTSA was investigating the "timeliness and scope" of the March 2017 Sonata and Santa Fe engine recalls, it relayed to Hyundai that there had been a number of engine-stall and spontaneous fire claims for the Tucson equipped with GDI engines. This investigation, presumably, eventually led to the recall of the 2011-2013 Hyundai Tucson at issue here.[17]

59.    In January 2019, Hyundai recalled 100,000 2011-2014 Sonata and 2013-2014 Santa Fe Sport vehicles, and Kia recalled 68,000 2011-2014 Optima, 2012-2014 Sorento, and

---

[16] Part 573 Safety Recall Report for NHTSA Recall No. 17V224000 (Mar. 31, 2017) available at https://static.nhtsa.gov/odi/rcl/2017/RCLRPT-17V224-2355.PDF (last visited Mar. 1, 2019), at 2.

[17] Andrew Krok, *Hyundai, Kia recall 500,000 cars over fire concerns,* CNet (Feb. 28, 2019), https://www.cnet.com/roadshow/news/hyundai-kia-recall-500000-cars-fire-concerns/ (last visited Mar. 1, 2019).

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

2011-2013 Sportage vehicles.[18] These vehicles had already been involved in an earlier recall that could include engine replacement, but fires could recur despite that purported repair. Hyundai has previously repaired cars with similar defects, only to have the problems recur either because the replacement parts suffered from the same defects or because other parts were damaged by the repair process. Consumers whose Class Vehicles are just now being recalled for the first time therefore have reason to worry that merely recalling and repairing these vehicles may not solve these serious and dangerous safety-related defects.

### b. Pre-sale Durability Testing Should Have Revealed These Defects.

60.     Before vehicles are certified and offered for sale in the United States, they are supposed to undergo rigorous durability testing in order to identify defects such as these. Defendants are required to do this testing for each vehicle model and model year to be sold in the United States.

61.     Hyundai and Kia have long touted the joint-testing facility they maintain in California, known as the "Proving Grounds."[19] Opened in 2005, the Proving Grounds—a $60 million facility—was designed as a "test site for the next-generation Hyundai and Kia vehicles," "reaffirm[ing] the compan[ies'] commitment to designing, testing, and building [Hyundai and Kia] products in the United States for North American Consumers."[20] Commentators have also noted the thorough nature of tests conducted at the Proving Grounds, with one such commentator

[18] Andrew Krok, *Hyundai adds 100,000 cars to Kia's engine-fire recall*, CNet (January 17, 2019), https://www.cnet.com/roadshow/news/hyundai-recall-engine-fire-kia/ (last visited Mar. 4, 2019); Andrew Krok, *Kia Optima, Sorento, Sportage recalled a second time for fire risks*, CNet (January 16, 2019, https://www.cnet.com/news/kia-optima-sorento-sportage-recall-fire-risks/ (last visited Mar. 4, 2019).
[19] Kim Dong-Jin, Vice Chairman of Hyundai Motor Company Local Officials Celebrate the Innovative Proving Ground (Jan. 26, 2005), https://www.hyundainews.com/en-us/releases/393 (last visited Aug. 19, 2019).
[20] *Id.*

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

calling them a "searing torture test."[21] Hyundai itself has been touting the Proving Grounds in support of its supposedly thorough testing procedures since as far back as January 2013, claiming things like, "All our testing means it's ready for all of yours"[22]:



**All of our testing means it's ready for all of yours.**

Our California Proving Grounds is a tough place. We leave parts out in the sun for years on end to make sure they'll stand up to even the most extreme heat. We punish our vehicles over rough terrain, hairpin turns and pothole-riddled highways. We simulate America's most demanding driving conditions, over and over and over again. We do all this until we're completely satisfied that every Hyundai is durable, reliable and battle-tested. Then we take what we learn to create some of the safest vehicles on the road. So you can rest assured knowing that your car can handle all the tests you throw at it.

62.    Defendants' purportedly rigorous durability testing likely explains why, in January 2013, Hyundai was so comfortable claiming "[t]here's one thing missing from every Hyundai. Worry."[23]

---

[21] Graem Fletcher, *Kia's proving grounds a searing torture test* (Sept. 19, 2013), https://driving.ca/kia/auto-news/news/kias-proving-grounds-a-searing-torture-test-3 (last visited Aug. 19, 2019).

[22] https://www.hyundaiusa.com/new-thinking/quality.aspx, available at https://web.archive.org/web/20130116092630/https://www.hyundaiusa.com/new-thinking/quality.aspx (last visited Aug. 19, 2019).

[23] *Id.*

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 29

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Unfortunately, Plaintiffs and their fellow Class members had a lot to worry about—namely, that their vehicles could stall at speed, and/or burst into flame. These defects should have been caught by Defendants' rigorous testing.

63.    Kia's website, press releases, and marketing materials continue to tout "rigorous" testing of both normal and extraordinary driving conditions, over long hours and thousands of miles and in extreme weather and geography, to ensure the durability of Kia vehicles. Kia's website touts its testing: "We put our engines through rigorous testing in the highest, hottest, and coldest places that a car can possibly be before we put them in our cars."[24]

---

[24] http://www.kia.com/worldwide/experience_kia/rnd/performance.do (last visited Mar. 4, 2019).

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 30

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384



64.     Kia's website goes on to describe several specific durability tests it conducts, under the motto "We ruin our cars in various ways, identify causes and find solutions to them to make our cars endure over a long time without fault."[25] These tests include: 1. "item durability tests" of individual parts, 2. "module durability tests" of entire assembled components, 3. a "Belgian road test" of driving over rough cobbles to test noise, vibration, and harshness, 4. a "high speed test," 5. a "corrosion test," 6. a "P/T test" of engine performance and temperature, and 7. whole-vehicle safety/crash testing. It further describes testing for extreme weather conditions as well as durability testing conducted on numerous test facilities around the world.

---

[25] http://www.kia.com/worldwide/experience_kia/rnd/performance.do (last visited March 4, 2019).

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384



65.      Kia therefore knew or should have known about these defects before each
affected model year ever went to market as a result of its durability testing. But Kia definitely
knew about the problem in at least the 1.6-liter engine and had a fix for it by mid-2016 at the
latest, and introduced new programming that (presumably) remedied the problem for 2017 model
year Soul vehicles. Kia's proposed recall repair is to simply reprogram 2012-2016 model year
1.6-liter Souls with the newer programming, which illustrates that between 2016 and 2019, if not
beginning before the 2012 model year went on the market, Kia actively concealed its knowledge
of this dangerous defect from consumers and safety regulators alike despite hundreds of reports
of catastrophic engine failures.

66.      Based on the rigorous testing that Defendants were required to perform and which
they performed on their own accord, Defendants should have known about the defects in Class
Vehicles well before Plaintiffs and Class members started purchasing them. Even if Defendants

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

were initially ignorant of the problem, the hundreds if not thousands of NHTSA complaints related to Class Vehicles and cars with similar safety-related defects should have put Defendants on notice.

c.    **NHTSA Reports from Consumers Put Defendants on Notice, but Defendants Did Nothing.**

67.    Numerous owners and lessees of 2012-2016 Soul vehicles equipped with both the 1.6-liter and 2.0-liter engines have submitted complaints about catastrophic engine failures and fires to the National Highway Traffic Safety Administration. These complaints go as far back as 2011. Some examples appear below.

2012 Kia Soul[26] – NHTSA ID Number: 11128688

VEHICLE HAS 96000 MILES. WHILE DRIVING ON HIGHWAY BEGAN TO HEAR RATTLING AND PINGING. ATTEMPTED TO MAKE IT TO REST AREA TO PULL OVER AND INSPECT. HEARD LOUD BANG AND ENGINE STALLED. COASTED INTO REST AREA. INSPECTION REVEALED OIL LEAKING FROM HOLE BLOWN IN LOWER ENGINE BLOCK.

2014 Kia Soul[27] – NHTSA ID Number: 11173144

WHILE DRIVING ON THE HIGHWAY, THE DASH BOARD STARTED TURN OFF AND ON THE CAR BEGAN TO LOSE POWER. I PULLED OFF TO THE SIDE AND THE LIGHTS ON THE DASH CAME ON AND THE CAR SHUT DOWN COMPLETELY.WITHIN A FEW MINUTES SMOKE STARTED COMING FROM THE HOOD OF THE CAR FOLLOWED BY A SMALL FIRE. I GOT OUT OF THE CAR AND THE FIRE GREW AND COMPLETLY BURNED THE CAR.

2016 Kia Soul – NHTSA ID Number: 11180538

AFTER A SHORT DRIVE, I PARKED MY 2016 KIA SOUL IN THE GARAGE AND 15 MINUTES LATER I HEARD A NOISE IN THE GARAGE. MY HUSBAND OPENED THE DOOR TO THE GARAGE AND FOUND FLAMES COMING FROM THE

---

[26] Complaints regarding the 2012 Kia Soul (2.0 liter Nu engine), Plaintiff Snider's model, go back as far as September 27, 2011. *See* NHTSA ID Number: 10427688. Complaints regarding the 2012 Kia Soul (1.6 liter Gamma engine), Plaintiff Parker's model, go back as far as July 7, 2014. *See* NHTSA ID Number: 10608591.

[27] Complaints regarding the 2014 Kia Soul (2.0 liter Nu engine), Plaintiff Twigger's model, go back as far as August 18, 2014. *See* NHTSA ID Number: 10626163.

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 33

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

STATIONARY KIA. THE ENTIRE GARAGE CAUGHT FIRE AND INCLUDED MY OTHER CAR WHICH WAS AN INFINITI G35. THE PRIMARY FLAMES WERE COMING OUT OF THE HOOD/FRONT RIGHT FENDER SEAM WITH MINOR FLAMES UNDERNEATH THE KIA. WE KNOW THAT THE FIRE STARTED IN THE PASSENGER SIDE OF THE ENGINE COMPARTMENT OF THE KIA SOUL. THE VEHICLE WAS LESS THAN ONE YEAR OLD, HAD APPROXIMATELY 6000 MILES, AND HAD ONLY BEEN SERVICED ONCE AT THE HENDERSON KIA DEALERSHIP FOR AN OIL CHANGE. … WE HAD TO MOVE OUT OF OUR HOME FOR FIVE MONTHS WHILE THE HOUSE WAS BEING REPAIRED. THERE WAS OVER $142,000 DAMAGE TO OUR HOME AND PERSONAL PROPERTY.

68.    Similarly, numerous owners and lessees of 2011-2013 Hyundai Tucson SUVs complained to the NHTSA, beginning as early as December 2013. Some examples follow:

2012 Hyundai Tucson NHTSA ID Number: 11103584

CATASTROPHIC ENGINE FAILURE ON A 2012 TUCSON WITH ONLY 80K MILES. THE VEHICLE WAS REGULARLY SERVICED. HEARD A FAINT TICKING COMING FROM THE ENGINE WHILE DRIVING, AND LATER THAT DAY, THE ENGINE BLEW. APPARENTLY THE THETA 2 ENGINE THE VEHICLE USES IS KNOWN FOR FAILURE, BUT THE HYUNDAI DEALERSHIP I TOOK THE VEHICLE TO CLAIMED ONLY ABOUT 2% OF THESE CARS WERE AFFECTED, AND I WAS JUST "UNLUCKY". NO WARNING LIGHTS, NOTHING. WAS ON THE INTERSTATE DURING RUSH HOUR AT THE TIME OF THE INCIDENT, AND WAS ALMOST HIT BY MULTIPLE VEHICLES BECAUSE OF THIS.

2013 Hyundai Tucson[28] NHTSA ID Number: 11119738

ON JUNE 17, 2018 MY ENGINE BLEW ON MY 2013 TUCSON, LESS THAN 75000 MILES. WE WERE TRAVELING ON THE INTERSTATE AT SPEEDS OF 75 MILES PER HOUR WHEN THE ENGINE BEGAN TO KNOCK THEN LOOSE SPEED. TRAFFIC ALL AROUND US WAS TRAVELING AT 75-80 MILES PER HOUR, VERY SCARY AS WE WERE GOING 10-15 MILES PER HOUR WHEN WE MANAGED TO PULL OFF ON AN EXIT AND THE ENGINE SIMPLY DIED AND NEVER WOULD RESTART. WE HAD TO PUSH IT THROUGH A BUSY INTERSECTION TO A GAS STATION. WE HAD IT TOWED TO THE LOCAL HYUNDAI DEALER WHERE IT STILL SITS 2 MONTHS LATER WAITING ON AN ENGINE TO BE DELIVERED.

---

[28] Complaints regarding the 2013 Hyundai Tucson (2.4 liter Theta II engine), Plaintiff Short's model, go back as far as June 14, 2016. *See* NHTSA ID Number: 10993737 (experienced engine stall while driving 65 MPH).

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 34

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

69.     Despite the 300-plus vehicle fire reports NHTSA received, Hyundai and Kia representatives initially dismissed the dangers their vehicles posed to consumers, claiming that "[i]n some very rare instances—a rate of less than 1 percent—the affected engines have caught on fire. An exhaustive study has confirmed that there is no defect trend outside of that identified in the related recalls causing non-collision fires in Hyundai vehicles."[29] Even if this estimate is accurate, 1% of the 1.7 million or more vehicles Defendants have recalled for engine fire risks so far amount to 17,000 engine fires suffered by American consumers, and would mean more than 8,000 fires in Class Vehicles.

70.     Defendants' irresponsibly slow reaction and failure to adequately remedy the stalling and engine fires caused by their defective vehicles drew the interest of the Senate Commerce Committee, which invited the automakers to defend their lack of response. Though they were asked to "promptly identify and respond to defects that may pose a fire risk" at a November 14, 2018 hearing, and despite the ongoing investigation into why hundreds or thousands of their vehicles were spontaneously bursting into flames, the Hyundai and Kia executives refused to attend the congressional hearing.

71.     In response to Defendants' refusal to appear before Congress, Jason Levine, executive director of the Center for Auto Safety, said: "Until Hyundai and Kia are willing to take responsibility for the three million vehicles on the road that could burst into flames at any minute—with no apparent warning to the driver—we will continue to press for a recall and full and thorough investigation. There has already been one death and a few injuries associated with

---

[29] Kyle Hyatt, *Center for Auto Safety calls out Hyundai and Kia over lack of fire recall,* CNet (Oct. 12, 2018), https://www.cnet.com/roadshow/news/hyundai-kia-center-for-auto-safety-fire-recall/ (last visited Mar. 1, 2019).

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

these vehicle fires. How many people need to be horrifically burned before someone takes action?"[30]

72.    Though more than three years had gone by since the original 2015 recall of vehicles with "Theta II" engines, Kia claimed in late 2018 that the company was working with the Senate committee to "analyze all relevant information associated with any fire or other safety-related matters and will take any necessary corrective action in a timely manner."[31] However, Defendants' failure to respond proactively to these dangerous defects, and lengthy concealment of them, is unsurprising in light of the previous delays and failed recall of the "Theta II" engines.

73.    For the 2011-2013 Hyundai Tucson, despite the announced recall, Hyundai's belated fix does nothing to address engine damage accrued already as a result of the defect, but seeks instead—at most—to prevent some future oil leaks. For the 2012-2016 1.6-liter Kia Soul, Kia proposes to simply reprogram the catalytic converter, which may not be permissible under emissions regulations and, in any event, is unlikely to repair an engine defect of this severity. For those who have already suffered damaged engines, Kia proposes to replace their engines with the same defective design. The recall does not provide for compensation to those whose engines have already failed, or who have paid out of pocket to repair or replace them. Finally, for the 2012-2016 2.0-liter Kia Soul, Kia has not taken any action at all but has, as Plaintiff Ronfeldt

---

[30] Jackie Callaway, *Kia, Hyundai CEOs refuse to attend Senate hearing to explain cause of car fires,* ABC Action News (Nov. 8, 2018, updated Dec. 10, 2018), https://www.abcactionnews.com/news/local-news/i-team-investigates/kia-hyundai-ceos-refuse-to-attend-senate-hearing-to-explain-cause-of-car-fires (last visited Mar. 1, 2019).
[31] *Id.*

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 36

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

experienced, denied responsibility and warranty coverage for engine failures resulting from the defect. These recalls—or lack thereof—are too little, too late.

### 3. Defendants' Actions Have Caused Class Members Significant Harm.

74.     Owners and lessees of Class Vehicles did not receive the vehicles they bargained for at the time of purchase. Plaintiffs bought vehicles they presumed were fit for sale and free of any serious safety-related defects. Had Defendants disclosed the true nature of these vehicles, Plaintiffs would have paid less for them or chosen to purchase other vehicles. Defendants did not tell Plaintiffs that they were purchasing vehicles with serious safety-related defects. As a result of Defendants' conduct—in failing to remedy dangerous defects that Defendants knew or should have known about, and in failing to disclose and/or actively concealing these defects even in the face of complaints and regulatory investigations—consumers have been driving unsafe vehicles that could suddenly stall at speed or burst into flames.

75.     Plaintiffs are skeptical that the proposed recalls can or will actually repair the defects, based both on Defendants' track record of failed recall repairs for similar defects and on the nature of these defects and the proposed repairs. But at this late stage, even a successful recall campaign would not make Plaintiffs whole for the overpayment injury suffered at the time of purchase, for the risk associated with years of driving vehicles with dangerous defect for years, or for the inconvenience and expense associated with extensive repairs and the time it will likely to take to achieve a "final" fix. Finally, Plaintiffs believe that, as a result of Defendants' conduct, the market values of the Class Vehicles have been reduced.

76.     Defendants' new recalls affect more than half a million vehicles on the road and are part of a lengthy string of recalls for engine fires and failures. Defendants delayed taking action despite the fact that they received hundreds of complaints about engine fires, despite the

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 37

fact that durability testing should have informed them of the safety-related defects before the Class Vehicles went on sale, and despite the fact that they knew about the dangerous defect in the 1.6-liter Soul long enough ago to develop a solution for 2017 model year vehicles manufactured in 2016.[32] For the 2011-2013 Hyundai Tucson, nine years of inaction is too long, and the proposed recall still does not actually repair any damage suffered as a result of the defect. Defendants have still done nothing to remedy the defect in the 2.0-liter Kia Soul. This inaction is unacceptable in light of the risks presented by the serious safety-related defects present in all of the Class Vehicles—namely, that the engines can suddenly stall and burst into flames.

## V.    CLASS ACTION ALLEGATIONS

### A.    Class Definitions

77.    Pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves, the Nationwide Class, and State Classes, defined as:

**Nationwide Class:**

All persons or entities in the United States (including its territories and the District of Columbia) who purchased or leased a Class Vehicle.

78.    In addition to the Nationwide class, and pursuant to Federal Rules of Civil Procedure Rule 23(c)(5), Plaintiffs seek to represent the following State Classes as well as any subclasses or issue classes as Plaintiffs may propose and/or the Court may designate at the time of class certification:

**California State Class:**

---

[32] Tracy Samilton, *Hyundai and Kia recall more vehicles over engine fires/failures,* NPR Michigan Radio (Feb. 28, 2019), https://www.michiganradio.org/post/hyundai-and-kia-recall-more-vehicles-over-engine-firesfailures (last visited Mar. 2, 2019).

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 38

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

All persons or entities in the state of California who purchased or leased a Class Vehicle.

**Ohio State Class:**

All persons or entities in the state of Ohio who purchased or leased a Class Vehicle.

**Pennsylvania State Class**

All persons or entities in the state of Pennsylvania who purchased or leased a Class Vehicle.

**Washington State Class:**

All persons or entities in the state of Washington who purchased or leased a Class Vehicle.

**West Virginia State Class:**

All persons or entities in the state of West Virginia who purchased or leased a Class Vehicle.

79.    Excluded from the Classes are individuals who have personal injury claims resulting from the conduct and defects alleged herein; Defendants and their subsidiaries, affiliates, and officers; all persons who timely elect to exclude themselves from the Classes; and the Judge to whom this case is assigned and his or her immediate family. Plaintiffs reserve the right to revise the Class definitions based on information learned through discovery.

80.    Certification of Plaintiffs' claims for classwide treatment is appropriate because Plaintiffs can prove the elements of their claims regarding liability and entitlement to damages on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim. This action has been brought and may be properly maintained on behalf of the Nationwide Class and/or State Class proposed herein under Federal Rule of Civil Procedure 23.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

81.     Plaintiffs reserve the right to modify the definition of the Nationwide and/or any State Class prior to class certification.

**B.     Class Certification Requirements**

82.     **Numerosity: Rule 23(a)(1):** The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Plaintiffs are informed and believe, based on available information on the volume of sales and recalls of Class Vehicles, that there are no fewer than 500,000 members of the Class. The precise number of Class members may be ascertained from Defendants' records and vehicle registration records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, social media, and published notice.

83.     **Commonality and Predominance: Rules 23(a)(2) and 23(b)(3):** This action involves significant common questions of law and fact, which predominate over any questions affecting individual Class members, including, but not limited to:

A.     Whether Defendants engaged in the conduct alleged herein;

B.     Whether Defendants designed, advertised, marketed, distributed, leased, sold, or otherwise placed Class Vehicles into the stream of commerce in the United States;

C.     Whether the Class Vehicles have the defects alleged herein, and whether those defects constitute a safety-related defect;

D.     Whether Defendants knew or should have known that the Class Vehicles contained defects as alleged herein;

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

E.     Whether a reasonable consumer would consider the defects alleged herein and their consequences material to the decision to purchase or lease a Class Vehicle;

F.     When Defendants discovered, knew, or should have known of the existence of the defects alleged herein;

G.     Whether the Class Vehicles can be made to comply with applicable emissions standards if the proposed recall repairs are effectuated without substantially degrading the performance, efficiency, or advertised emissions of the Class Vehicles;

H.     Whether Plaintiffs and the other Class members overpaid for their Class Vehicles as a result of the defects and Defendants' concealment thereof;

I.     Whether Defendants had a duty to disclose the true nature of the Class Vehicles to Plaintiffs and Class members;

J.     Whether Plaintiffs suffered out-of-pocket losses as a result of the defects alleged herein and whether they will suffer out-of-pocket losses as a result of the proposed recalls;

K.     Whether Defendants omitted, concealed, and/or failed to disclose material facts about the Class Vehicles;

L.     Whether Defendants' concealment of the true nature of the Class Vehicles would have induced a reasonable consumer to act to his or her detriment by purchasing and/or leasing the Class Vehicles;

M.     Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief;

N.     Whether the remedies proposed below for each group of Class Vehicles would constitute adequate and appropriate relief for the Class:

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 41

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

| Year and Model | Defendants' Proposed Recall | Proposed Class Relief |
|---|---|---|
| 2012-2016 Kia Soul 1.6 | Reprogram ECU, replace catalytic converter, and/or replace engine block if already damaged. | Buyback or, if repair is effective, additional warranty coverage and monetary compensation. |
| 2012-2016 Kia Soul 2.0 | None. | Buyback or, if repair is possible, recall and monetary compensation. |
| 2011-2013 Hyundai Tucson | Inspect oil pan for prior leaks, replace oil pan if leaks exist, and replace oil pressure switch. | Buyback or, if repair is possible, recall with engine inspection, warranty coverage, and monetary compensation. |

O.     Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount; and

P.     Whether Defendants continue to unlawfully conceal and misrepresent whether additional vehicles, besides those reported in the press to date, are in fact Class Vehicles.

84.     **Typicality: Rule 23(a)(3):**  Plaintiffs' claims are typical of the claims of the Class members whom they seek to represent under Federal Rule of Civil Procedure 23(a)(3), because Plaintiffs and each Class member purchased a Class Vehicle and were similarly injured through Defendants' wrongful conduct as described above.  Plaintiffs and the other Class members suffered damages as a direct, proximate result of the same wrongful practices by Defendants.  Plaintiffs' claims arise from the same practices and courses of conduct that give rise to the claims of the other Class members.  Plaintiffs' claims are based upon the same legal theories as the claims of the other Class members.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

85.    **Adequacy: Rule 23(a)(4).**  Plaintiffs will fairly and adequately represent and protect the interests of the Class members as required by Federal Rule of Civil Procedure 23(a)(4).  Plaintiffs have retained counsel competent and experienced in complex class action litigation, including vehicle defect litigation and other consumer protection litigation.  Plaintiffs intend to prosecute this action vigorously.  Neither Plaintiffs nor their counsel have interests that conflict with the interests of the other Class members.  Therefore, the interests of the Class members will be fairly and adequately protected.

86.    **Declaratory and Injunctive Relief: Rule 23(b)(2).**  Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

87.    **Superiority: Rule 23(b)(3).**  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for members of the Class to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

# VI.    EQUITABLE TOLLING

## A.    Discovery Rule

88.    Plaintiffs and Class members did not discover, and could not have discovered through the exercise of reasonable diligence, Defendants' deception concerning the safety-related defects alleged herein.

89.    Defendants' concealment was effective until a NHTSA investigation prompted by consumer complaints forced Defendants to institute the recent recall campaign.

90.    Plaintiffs and Class members could not have discovered through the exercise of reasonable diligence that Defendants were concealing the defects alleged herein until the NHTSA recall campaign revealed it to the public.

91.    Unless a Class member experienced a catastrophic engine failure, like Plaintiff Twigger did, Plaintiffs and Class members would have no reason to discover the defects alleged herein, and even if they did experience such a failure, would have no reason to discover the existence of a widespread defect and effort to conceal it.

92.    Plaintiffs and Class members therefore did not discover, and did not know of, facts that would have caused a reasonable person to suspect that Defendants had concealed information about defects in the Class Vehicles until shortly before this action was filed.

93.    For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to the Class Vehicles.

## B.    Fraudulent Concealment

94.    All applicable statutes of limitation have also been tolled by Defendants' knowing, active and ongoing fraudulent concealment of the facts alleged herein.

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 44

95.     Defendants concealed the defects and failed to disclose or remedy them for years. Even now, with NHTSA recalls pending, Defendants offer a fix that is almost certainly inadequate for the two of the defects despite acknowledging the important safety connection. As to the third, Defendants still have not admitted the existence of or proposed any action to remedy the defect.

96.     Even after the filing of this and other lawsuits concerning the Kia Soul 1.6-liter defect, Kia has persisted in misleading its customers. On April 8, 2019, Kia provided to NHTSA for publication a Q&A document intended for consumers that says, in pertinent part, that Kia has not had any litigation regarding the defect.[33]



**SC176 – 2012-2016 MY KIA SOUL ENGINE CONTROL UNIT (ECU) LOGIC UPGRADE SAFETY RECALL CAMPAIGN**
**Q & A**

**April 8, 2019**

…

**Q10.    Has Kia had any litigation regarding this condition?**

*A10.    No.*

---

[33] SC176 – 2012-2016 MY Kia Soul Engine Control Unit (ECU) Logic Upgrade Safety Recall Campaign Q&A, April 8, 2019, https://static.nhtsa.gov/odi/rcl/2019/RMISC-19V120-2440.pdf (last visited April 29, 2019).

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 45

1

**C.     Estoppel**

2      97.     Defendants were and are under a continuous duty to disclose to Plaintiffs and

3 Class members the true character, quality, and nature of the Class Vehicles, including the

4 vehicles' safety-related defects as alleged herein, and the inevitable repairs, costs, time, and

5 monetary damage resulting therefrom. Defendants actively concealed the true character, quality,

6 and nature of the Class Vehicles and did not disclose the safety-related defects until very

7 recently, when they finally instituted a recall related to some Class Vehicles, but not others.

8      98.     Based on the foregoing, Defendants are estopped from relying on any statutes of

9 limitations in defense of this action.

10

11                              **VII.    CLAIMS FOR RELIEF**

12      99.     California state law applies to the claims of the Nationwide Class because

13 Defendants' United States operations are headquartered in California. Defendants HMA and

14 KMA distribute, market, warrant, and test all Hyundai and Kia vehicles, respectively, sold or

15 leased in the United States, including the Class Vehicles. Although these actions take place and

16 have effects wherever in the United States the vehicles are sold, leased, registered, and operated,

17 Defendants' operations for distributing, engineering and testing, marketing, warrantying and

18 supervising service of the Class Vehicles are located in California, and on information and belief,

19 many of the decisions concerning Defendants' unfair, deceptive, and unlawful conduct emanated

20 from these California headquarters.

21

22                                      **COUNT I**
                                **FRAUD BY CONCEALMENT**
23                                    **(Common Law)**

24      100.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set

25 forth herein.

26

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 46

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

101.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class, or alternatively, each of the State Classes, against all Defendants.

102.    The Defendants intentionally concealed, suppressed, and failed to disclose the material fact that the Class Vehicles had design and manufacturing defects that could result in sudden and catastrophic engine stalling, failure, and fire. Defendants knew or should have known the true facts, due to their involvement in the design, installation, calibration, manufacture, durability testing, and warranty service of the engines, catalytic converters, oil pans and pressure sensors, and ECU programming in the Class Vehicles. And yet, at no time did any of these Defendants reveal the truth to Plaintiffs or the Class. To the contrary, each Defendant concealed the truth, intending for Plaintiffs and the Class to rely on these omissions. Each Plaintiff and Class member purchased or leased a Class Vehicle believing, in reliance on Defendants' statements and omissions, it to be safe and free from major engine defects.

103.    A reasonable consumer would not know that the catalytic converter in 1.6-liter Kia Soul vehicles could overheat, resulting in catastrophic engine failure and/or fire. Nor would a reasonable consumer know that the oil pan in Hyundai Tucson vehicles could leak, resulting in engine stalls, failures, and/or fires. A reasonable consumer also would not know—because Defendants still have not admitted—that 2.0-liter Kia Soul vehicles suffer from a defect that can also result in catastrophic engine failures and fires. Plaintiffs and the members of the Class did not know of the facts which were concealed from them by Defendants. Moreover, as ordinary consumers, Plaintiffs and the members of the Class did not, and could not, unravel the deception on their own.

104.    Defendants had a duty to disclose that these defects existed. Defendants had such a duty because the true facts were known and/or accessible only to them and because they knew

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 47

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

these facts were not known to or reasonably discoverable by Plaintiffs or the members of the Class unless and until the defect manifested in their personal vehicle. Additionally, the defects were safety related because they could cause engine stalls, at speed, and fires. As alleged herein, Defendants denied and concealed the defects in the face of consumer complaints and regulatory investigations. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own.

105.    Defendants also had a duty to disclose the true nature of these vehicles as a result of their prior recalls. By issuing recalls of certain vehicles and representing that these represented the full population of affected vehicles, Defendants led consumers and even safety regulators to believe, at least for a time, that they were remedying the engine fire problems. In fact, these recalls—in addition to being unsuccessful—failed to include hundreds of thousands of additional vehicles that suffered from similar major defects. For those vehicles for which Defendants have now announced recalls, those recalls do not go nearly far enough to remedy the problems or compensate consumers.

106.    Had Defendants timely revealed the material facts of the safety-related defects, Plaintiffs and the Class would not have purchased the Class Vehicles or would have paid less for them. Class Vehicles have also diminished in value as a result of Defendants' fraud. Accordingly, Defendants are liable to Plaintiffs and the members of the Class for damages in an amount to be proven at trial.

107.    Defendants' acts were committed wantonly, maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the rights of Plaintiffs and the Class; and to enrich themselves. Their misconduct warrants an assessment of punitive damages in an

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 48

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

108.    Even after the filing of this and other lawsuits concerning the Kia Soul 1.6-liter defect, Kia has persisted in misleading its customers. On April 8, 2019, Kia provided to NHTSA for publication a Q&A document intended for consumers that says, in pertinent part, that Kia has not had any litigation regarding the defect.[34]



**SC176 – 2012-2016 MY KIA SOUL ENGINE CONTROL UNIT (ECU) LOGIC UPGRADE SAFETY RECALL CAMPAIGN**
**Q & A**

**April 8, 2019**

…

## Q10.    Has Kia had any litigation regarding this condition?

## A10.    No.

109.    Meanwhile, there is still no proposed recall at all for the Kia Soul with the 2.0-liter "Nu" engine.

110.    Plaintiffs plead this count pursuant to the laws of California, where Defendants' United States operations are headquartered, on behalf of all members of the Class. As necessary, and in the alternative, Plaintiffs may allege state subclasses, based on the residences at pertinent

---

[34] SC176 – 2012-2016 MY Kia Soul Engine Control Unit (ECU) Logic Upgrade Safety Recall Campaign Q&A, April 8, 2019, https://static.nhtsa.gov/odi/rcl/2019/RMISC-19V120-2440.pdf (last visited April 29, 2019).

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION (Case No. 2:19-cv-318-JLR) - 49

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

times of members of the Class, to allege fraudulent concealment under the laws of states other than California.

## COUNT II
## IMPLIED AND WRITTEN WARRANTY
### Magnuson-Moss Warranty Act (15 U.S.C. §§ 2301 *et seq.*)

111.    Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

112.    Plaintiffs assert this cause of action on behalf of themselves and the other members of the Nationwide Class.

113.    This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 15 U.S.C. § 2310(d).

114.    The Class Vehicles are a "consumer product," as that term is defined in 15 U.S.C. § 2301(1).

115.    Plaintiffs and Class members are "consumers," as that term is defined in 15 U.S.C. § 2301(3).

116.    Each Defendant is a "warrantor" and "supplier" as those terms are defined in 15 U.S.C. § 2301(4) and (5).

117.    15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied or written warranty.

118.    As described herein, Defendants provided Plaintiffs and Class members with "implied warranties" and "written warranties" as those terms are defined in 15 U.S.C. § 2301.

119.    Defendants have breached these warranties. The Class Vehicles have safety-related defects, as described above, which resulted in the problems and failures also described above, and which make them unfit to drive.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

120.    By Defendants' conduct as described herein, including knowledge of the safety-related defects inherent in the vehicles and Defendants' action, and inaction, in the face of the knowledge, Defendants have failed to comply with their obligations under their written and implied promises, warranties, and representations.

121.    In their capacity as warrantors, and by the conduct described herein, any attempts by Defendants to limit the implied warranties in a manner that would exclude coverage of the defects is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective software and supporting systems is null and void.

122.    All jurisdictional prerequisites have been satisfied.

123.    Plaintiffs and members of the Class are in privity with Defendants in that they purchased Class Vehicles from Defendants via their agents.

124.    As a result of Defendants' breach of warranties, Plaintiffs and Class members are entitled to revoke their acceptance of the vehicles, obtain damages and equitable relief, and obtain costs pursuant to 15 U.S.C. § 2310.

## COUNT III
## VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW
### (Cal. Bus. & Prof. Code § 17200, *et seq.*)

125.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

126.    Plaintiffs bring this action on behalf of themselves and the Nationwide Class against all Defendants or, in the alternative, Plaintiff Parker brings this claim on behalf of the California State Class against all Defendants.

127.    California Business and Professions Code § 17200 prohibits any "unlawful, unfair, or fraudulent business act or practices."

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 51

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

128.    Defendants have engaged in unlawful, fraudulent, and unfair business acts and practices in violation of the UCL by knowingly and intentionally concealing the serious safety-related defects in the Class Vehicles from Plaintiffs and Class members, as well as the risks of serious harm and monetary damage stemming therefrom. This information was material to Plaintiffs and Class members, just as it would have been to any reasonable consumer who purchased a vehicle that he or she believed was fit to drive and not at risk that it may suddenly stall at speed and ignite in flame.

129.    Defendants were in a superior position to know the true nature of the Class Vehicles and Plaintiffs and Class members could not discover the true facts about the defects through ordinary and reasonable diligence. Defendants also had a duty to disclose the defects because they constitute a safety issue for drivers and passengers of Class Vehicles.

130.    Defendants' failure to disclose these facts violated the UCL, breached these duties to disclose, and injured Plaintiffs and Class members. Plaintiffs and Class members could not reasonably have avoided these injuries.

131.    These acts were likely to deceive the public, and did in fact deceive Plaintiffs, about material information.

132.    Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and members of the Class any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Bus. & Prof. Code § 3345; and for such other relief set forth below.

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 52

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## COUNT IV
## VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW
### (Cal. Bus. & Prof. Code § 17500, *et seq.*)

133. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

134. Plaintiffs bring this action on behalf of themselves and the Nationwide Class against all Defendants or, in the alternative, Plaintiff Parker brings this claim on behalf of the California State Class against all Defendants.

135. California Business & Professions Code § 17500 provides that "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

136. Defendants caused to be made and/or disseminated untrue or misleading statements throughout California and the United States, which were known or should have been known to Defendants to be untrue and misleading to consumers, including Plaintiffs and Class members, such as Defendants' claims about their "rigorous" testing and that "[t]here's one thing missing from every Hyundai. Worry."[35]

---

[35] https://www.hyundaiusa.com/new-thinking/quality.aspx, available at https://web.archive.org/web/20130116092630/https://www.hyundaiusa.com/new-thinking/quality.aspx (last visited Aug. 19, 2019).

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

137.    This conduct occurred in the course of Defendants' businesses and is part of a continuing pattern or generalized course of conduct in California and throughout the United States.

138.    Defendants' conduct violated the California False Advertising law because their misleading omissions concerning the safety and functionality of Class Vehicles were material and likely to deceive a reasonable consumer.

139.    Plaintiffs and the other Class Members have suffered an injury in fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and/or deceptive practices. In purchasing or leasing Class Vehicles, Plaintiffs and Class members relied on Defendants' misrepresentations and/or omissions concerning the safety and reliability of the Class Vehicles. These representations were untrue because the Class Vehicles contained serious safety-related defects that could result in catastrophic engine failure, engine stalls, and fires. Had Defendants disclosed this, or had Plaintiffs and Class members known this, Plaintiffs and Class members would not have purchased or leased Class Vehicles at all, or would have paid significantly less for them. Plaintiffs and other Class members overpaid at the time of purchase for vehicles that were not what they bargained for and did not receive and still have not received the benefit of their bargain because, due to their safety-related defects, their vehicles were not fit to drive.

140.    Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and Class members any money Defendants acquired by these practices, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 54

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## COUNT V
## VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT
### (Cal. Civ. Code § 1750 *et seq.*)

141.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

142.    Plaintiffs bring this action on behalf of themselves and the Nationwide Class against all Defendants or, in the alternative, Plaintiff Parker brings this claim on behalf of the California State Class against all Defendants.

143.    Defendants are "person[s]" under Cal. Civ. Code § 1761(c).

144.    Plaintiffs and Class members are "consumers," as defined by Cal. Civ. Code § 1761(d), who purchased or leased one or more Class Vehicles.

145.    The California Legal Remedies Act ("CLRA") prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770(a). Defendants have engaged in unfair or deceptive acts or practices that violated Cal. Civ. Code § 1750, *et seq.*, as described above and below by, at a minimum, representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

146.    In the course of their business, Defendants intentionally or negligently concealed and suppressed material facts concerning the serious and dangerous engine defects affecting the Class Vehicles. The Defendants concealed the truth about the defects and failed to make any

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 55

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

adequate effort to remedy them despite the fact that they knew or should have known about them for years.

147.     Plaintiffs and Class members had no way of discerning that Defendants had falsely and deceptively concealed these latent defects unless and until the defects manifested themselves by causing catastrophic and sudden engine failures, stalls, or fires. Plaintiffs and Class members could not unravel this deception on their own until the announcement—too late—of the inadequate proposed recall described above. For the Hyundai Tucson, Defendants acknowledge that it relates to an "important safety issue," and propose a recall repair that, after 6-9 years on the road, will do nothing to inspect for, repair, or compensate damage accrued as a result of a defect. For the Kia Soul, the proposed recall is also likely to be inadequate, both because it requires reprogramming an emissions component without regulatory certification and because it proposes replacing damaged engines with engines of the same defective design. Moreover, and particularly in light of Defendants' atrocious track record of remedying similar defects in GDI engines in previous recalls of other vehicles, Plaintiffs doubt that Defendants' proposed recall for the 1.6-liter Kia Soul or 2.4-liter Hyundai Tucson will actually fix the problems, and that any future recall repair—if such repairs ever become available—will remedy the problems with the 2.0-liter Kia Soul.

148.     Defendants' actions constitute a violation of the CLRA. Defendants knew or should have known the true nature of these vehicles as a result of pre-sale durability testing, of complaints and warranty claims by consumers to Defendants directly as well as to NHTSA, and of their previous failed recalls of related engines for similar defects.

149.     Defendants owed Plaintiffs a duty to disclose the defects and their resulting safety risks because they:

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

A.     Possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States with dangerous defects;

B.     Intentionally concealed the foregoing from regulators, Plaintiffs, and Class members; and/or

C.     Made incomplete representations, via earlier recalls of related vehicles for similar defects, concerning the safety and presence of defects in the Class Vehicles, while actually purposefully withholding material facts from Plaintiffs that contradicted these representations.

150.     Defendants' unfair and deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety, roadworthiness, and value of the Class Vehicles.

151.     Plaintiffs and Class members have suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment of and failure to disclose material information. Plaintiffs and Class members who purchased or leased Class Vehicles would not have done so at all, or would have paid significantly less for them, if their true nature was disclosed by Defendants and/or known by Plaintiffs and Class members.

152.     Meanwhile, Defendants had an ongoing duty to all of their customers to refrain from unfair and deceptive practices under the CLRA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

153.     Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

154.    Under Cal. Civ. Code § 1780(a), Plaintiffs and the California Class seek monetary relief against Defendants measured as the overpayment for their vehicles caused by Defendants' violations of the CLRA as alleged herein.

155.    Plaintiffs also seek punitive damages against Defendants because they carried out reprehensible conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiffs and the California Class to potential cruel and unjust hardship as a result. Defendants intentionally and willfully deceived Plaintiffs on life-or-death matters, and concealed material facts that only Defendants knew. Defendants' unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages under Cal. Civ. Code § 3294.

156.    Plaintiffs further seek an order enjoining Defendants' unfair or deceptive acts or practices, restitution, punitive damages, costs of court, and attorneys' fees under Cal. Civ. Code § 1780(e), and any other just and proper relief available under the CLRA.

157.    Plaintiffs, through undersigned counsel, provided Defendants notice of their violations of the CLRA in compliance with Cal. Civ. Code § 1782(a) on March 4, 2019.

## COUNT VI
## VIOLATIONS OF THE SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF IMPLIED WARRANTIES
### (Cal. Civ. Code §§ 1791.1 & 1792)

158.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

159.    Plaintiff Parker brings this action on behalf of herself and the California State Class against all Defendants.

160.    Plaintiffs and the other Class members who purchased or leased the Class Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 58

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

161.    The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

162.    Defendants are "manufacturer[s]" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791(j).

163.    Defendants impliedly warranted to Plaintiffs and the other Class members that their Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792, however, the Class Vehicles do not have the quality that a buyer would reasonably expect and are not fit for the ordinary purposes for which they were sold because the Class Vehicles and their engines contained inherent defects at the time of sale. These defects can cause the Class Vehicles to suffer catastrophic, sudden engine failure, stalls, and fires.

164.    The Class Vehicles are therefore not fit for the purpose of providing safe and reliable transportation. Defendants knew or should have known the use for which the Class Vehicles were purchased—namely, providing safe and reliable transportation. Defendants impliedly warranted that the Class Vehicles—and their engines—manufactured and distributed by Defendants were of merchantable quality and fit for such use.

165.    Because the Class Vehicles are defective—containing serious safety-related defects—Defendants' actions breached the implied warranty that the Class Vehicles were of merchantable quality and fit for the use for which they were purchased and violated the Song-Beverly Warranty Act.

## COUNT VII
## VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT
### (O.R.C. §§ 1345.01, *et seq.*)

166.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 59

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

167.    Plaintiff Ronfeldt brings this Count on behalf of himself and the Ohio State Class.

168.    Plaintiff Ronfeldt and the Ohio State Class are "consumers" within the meaning of Ohio Revised Code §1345.01(A)

169.    Defendants are "suppliers" within the meaning of Ohio Revised Code §1345.01(C).

170.    Plaintiff Ronfeldt, the Ohio State Class, and the Defendants all engaged in a "consumer transaction" within the meaning of Ohio Revised Code §1345.01(D).

171.    The Ohio Consumer Sales Practice ("CSPA") makes it unlawful for suppliers to "commit an unfair or deceptive act or practice in connection with a consumer transaction." O.R.C. § 1345.02, *et seq.*

172.    Defendants violated the CSPA by selling Class Vehicles with safety-related defects making the vehicles prone to catastrophic and sudden engine failures and stalling at speed, often resulting in fires.

173.    Prior to and throughout Plaintiff Ronfeldt's and the Ohio State Class's purchases and leases of their Defective Vehicles, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices by, among other things, representing that the defective Class Vehicles had characteristics, uses or benefits that they do not have; that the Class Vehicles were of a particular standard, quality, or grade that they were not; and, that the Class Vehicles were made available to Plaintiff and the Ohio State Class for a reason that does not exist.  *See* O.C.R. § 1345.02(B)(1), (2), and (4).

174.    Additionally, Defendants knowingly made misleading statements and representations with respect to the Class Vehicles (and particularly their defective engines) that

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 60

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Defendants knew the Ohio Plaintiff and the Ohio State Class would likely rely upon in deciding whether to purchase Defendants' Vehicles. *See* O.C.R. §1345.03(6).

175.    In the course of Defendants' business, they willfully failed to disclose the safety-related defects in the Class Vehicles as described above. Defendants also actively concealed the engine defects when they learned of them. Accordingly, Defendants engaged in unfair and deceptive acts or practices and unconscionable acts or practices.

176.    Defendants knowingly misrepresented the Class Vehicles as fit for the purpose for which they were intended, when, in fact, Defendants knew the Class Vehicles were unable to perform as advertised.

177.    These acts and practices have deceived Plaintiff Ronfeldt and the Ohio State Class and are likely to, and did, deceive the public. In failing to disclose the engine defects in the Class Vehicles and suppressing material facts from the Ohio Plaintiff and the Ohio State Class members, Defendants breached their duties to disclose these facts.

178.    The omissions and acts of concealment by the Defendants pertained to information that was material to Plaintiff Ronfeldt and Ohio State Class members, as it would have been to all reasonable consumers.

179.    Defendants knew or should have known that their conduct violated the CSPA.

180.    Plaintiff Ronfeldt and the Ohio State Class have suffered injury in fact and actual damages as a direct and proximate result of Defendants' material omissions and misrepresentations. Had Plaintiff Ronfeldt and the Ohio State Class known about the engine defect or defects in the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

181.    Plaintiff Ronfeldt and the Ohio State Class have suffered actual damages and ascertainable loss as a direct and proximate result of the Defendants' violations of the CSPA, including but not limited to diminished and or complete lost value for the Class Vehicles they purchased or leased; lost or diminished use, enjoyment and utility of such vehicles; and annoyance, aggravation and inconvenience resulting from Defendants' violations of the CSPA

182.    Pursuant to Ohio Revised Code § 1345.09, for each violation of the CSPA, Plaintiff Ronfeldt and the Ohio State Class members seek the actual damages resulting from each such violation, plus an amount not exceeding five thousand dollars in noneconomic damages, together with equitable relief as determined by the Court to be proper. Specifically, Plaintiff Ronfeldt and the Ohio State Class ask the Court to enjoin the Defendants from further unfair or deceptive acts or practices; to order that Defendants return all amounts that Plaintiff and the Ohio State Class paid to Defendants for purchase and/or lease of the Class Vehicles; to award attorneys' fees and costs against the Defendants; to assess punitive damages as the Court finds just and proper to punish Defendants for their willful, intentional and malicious plans to deceive, defraud and injure Plaintiff Ronfeldt and the Ohio State Class; and to order any other just and proper relief available under the CSPA.

## COUNT VIII
## VIOLATIONS OF THE OHIO DECEPTIVE TRADE PRACTICES ACT
### (O.R.C. §§ 4165.01, *et seq.*)

183.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

184.    Plaintiff Ronfeldt brings this Count on behalf of himself and the Ohio State Class.

185.    Defendants, Plaintiff Ronfeldt and the Ohio State Class are "persons" within the meaning of Ohio Rev. Code § 4165.01(D).

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 62

186.    Defendants engaged in "the course of [their] business[es]" within the meaning of Ohio Rev. Code § 4165.02(A) with respect to the acts alleged herein.

187.    The Ohio Deceptive Trade Practices Act, Ohio Rev. Code § 4165.02(A) ("Ohio DTPA") provides that a "person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation," the person does any of the following: "(2) Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; … (7) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have …; (9) Represents that goods or services are of a particular standard, quality, or grade, … if they are of another; … [or] (11) Advertises goods or services with intent not to sell them as advertised."

188.    Defendants thus violated the provisions of the Ohio DTPA, at a minimum, by:  (1) representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Class Vehicles are of a particular standard, quality, and grade when they are not; (3) advertising the Class Vehicles with the intent not to sell them as advertised; and (4) failing to disclose information concerning the Class Vehicles with the intent to induce customers to purchase or lease the Class Vehicles.

189.    Defendants engaged in misleading, false, unfair or deceptive acts or practices that violated the Ohio DTPA by installing, failing to disclose and/or actively concealing the safety-related defects in Class Vehicles' engines, by failing to disclose and/or actively concealing the risk of sudden engine failures, stalling, and the risk of engine fires, and by presenting themselves as reputable manufacturers that valued vehicle reliability and longevity and driver/passenger safety, and that it stood behind its vehicles after they were sold.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

190.    Defendants compounded their deception by failing to disclose evidence of engine failures and fires after they knew about the engine defects, and by failing to issue prompt and adequate recalls for the Class Vehicles, while at the same time claiming to be manufacturers that valued safety and vehicle reliability, and claiming that they stood behind their vehicles after they were sold.

191.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff Ronfeldt and the Ohio State Class.

192.    Defendants knew or should have known that their acts violated the Ohio DTPA.

193.    Defendants owed Plaintiff Ronfeldt and the Ohio State Class members a duty to disclose all the facts concerning the defective gasoline direct injection engines in the Class Vehicles and the safety-risks they presented because Defendants (1) possessed exclusive or vastly superior knowledge that they were manufacturing, selling and distributing the Class Vehicles throughout the United States (including Ohio) that contained engines prone to catastrophic failure and safety risks; (2) intentionally concealed the foregoing from regulators, Plaintiff Ronfeldt, and Ohio State Class members; and (3) made intentional, knowing, and/or negligent misrepresentations about the reliability and safety of the Class Vehicles.

194.    Defendants' unfair or deceptive acts or practices were likely to and in fact did deceive reasonable consumers, including Plaintiff Ronfeldt and the Ohio State Class members, about the reliability and safety of the engines in the Class Vehicles.

195.    Plaintiff and the Ohio State Class members suffered ascertainable loss and actual damages as a direct and proximate result of the Defendants' misrepresentations and concealment of and failure to disclose material information about the Class Vehicles. If Defendants had disclosed the true nature of the Class Vehicles, then Plaintiff Ronfeldt and the Ohio State Class

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

members would not have purchased or leased the Class Vehicles at all or would have paid substantially less for them.

196.    In the course of their business, Defendants had and have and ongoing duty to the Plaintiff and the Ohio State Class members to refrain from unfair and deceptive practices under the Ohio DTPA.

197.    Defendants' violations present a continuing risk both to the Plaintiffs and to the general public.

198.    Pursuant to Ohio Rev. Code § 4165.03, Plaintiff Ronfeldt and the Ohio State Class seek an order enjoining Defendants' unfair and deceptive acts or practices, and also seek damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Ohio DTPA.

**COUNT IX**
**VIOLATIONS OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**(O.R.C. §§ 1302.27 and 1310.19)**

199.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

200.    Plaintiff Ronfeldt brings this Count on behalf of himself and the Ohio State Class.

201.    The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Ohio Rev. Code §§ 1302.01(5) and 1310.01(A)(20), and "sellers" of motor vehicles under Ohio Rev. Code § 1302.01(4).

202.    With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under Ohio Rev. Code § 13.10.01(A)(20).

203.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Ohio Rev. Code §§ 1302.01(8) and 1310.01(A)(8).

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

204.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ohio Rev. Code §§ 1302.27 and 1310.19.

205.    These Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were not and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Class Vehicles are inherently defective in that they contain engines that are prone to sudden catastrophic failure and/or fires, rendering the vehicles unreliable, highly dangerous, and unfit to drive.

206.    Defendants were provided notice of these engine defects through numerous consumer complaints and incident reports over the years, specifically pertaining to the engines in the Class Vehicles, but also those relating to similar gasoline direct injection engines manufactured by Defendants for their other vehicles, and Defendants ignored, denied and concealed the dangerous engine defects for years prior to taking any action or issuing any recalls that may (or may not) address the defects.

207.    As a direct and proximate result of the Defendants' breach of the implied warranty of merchantability, Plaintiff Ronfeldt and the Ohio State Class members have been damaged in an amount to be proven at trial.

### COUNT X
### VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECION LAW
### (73 P.S. §§ 201-1, *et seq.*)

208.    Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

209.    This claim is brought pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law (the "Pennsylvania UTPA"), 73 P.S. § 201-1, *et seq.*

210.    The DiPardo Plaintiffs bring this action on behalf of themselves and the Pennsylvania State Class.

211.    The DiPardos, Class members, and Defendants are "person[s]" within the meaning of 73 P.S. § 201-2(2).

212.    Defendants were engaged in "trade" or "commerce" within the meaning of 73 P.S. § 201-2(3).

213.    The Pennsylvania UTPA defines and makes unlawful "unfair methods of competition" and "unfair or deceptive acts or practices" to include: "(v) Representing that goods . . . have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have . . . ; (vii) Representing that goods . . . are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another; (ix) Advertising goods . . . with intent not to sell them as advertised . . . ; (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4).

214.    In the course of their business, Defendants intentionally or negligently concealed and suppressed material facts concerning the serious and dangerous safety-related defects affecting the Class Vehicles' engines, which can cause the vehicles to stall while driving, at speed, then burst into flames. The Defendants failed to disclose and/or concealed the truth about the defects and failed to make any adequate effort to remedy them despite the fact that they knew or should have known about them for years.

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 67

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

215.    Defendants violated the Pennsylvania UTPA by, at minimum, representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; advertising the Class Vehicles with the intent not to sell them as advertised; and omitting material facts in describing the Class Vehicles.

216.    Defendants' acts and practices, as described throughout this Complaint, constitute "unfair methods of competition" and "unfair or deceptive acts or practices," that are unlawful, as enumerated in 73 P.S. § 201-2(4).

217.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with the intent to mislead the Pennsylvania Plaintiffs and the Class.

218.    Defendants knew or should have known that their conducted violated the Pennsylvania UTPA.

219.    Defendants' fraudulent concealment of the true characteristics of the safety of their Class Vehicles were material to the Pennsylvania Plaintiffs and Class members.

220.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices, complained of herein, affect the public interest.

221.    Defendants had an ongoing duty to their customers to refrain from unfair and deceptive practices under the Pennsylvania UTPA. All owners of Class Vehicles suffered ascertainable losses in the form of overpayment at the time of purchase and diminished value of their vehicles as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

222.    As a direct and proximate result of Defendants' violations of the Pennsylvania UTPA, the Pennsylvania Plaintiffs and the Class have suffered injury-in-fact and/or actual damages.

223.    Pursuant to 73 P.S. § 201-9.2(a), Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or practices, for actual and treble damages, punitive damages, and attorneys' fees, costs, and any other relief available under the Pennsylvania UTPA that the Court deems just and proper.

## COUNT XI
## VIOLATIONS OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (13 Pa. C.S.A. § 2A212)

224.    Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

225.    The DiPardo Plaintiffs bring this action on behalf of themselves and the Pennsylvania State Class.

226.    Defendants are and were at all relevant times "merchants," "sellers," and "lessors" with respect to motor vehicles, including the Class Vehicles.

227.    The Class Vehicles are and were at all relevant times "goods."

228.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law.

229.    The Class Vehicles, when sold or leased, and at all times thereafter, were not fit for the ordinary purpose for which vehicles are used. Specifically, as described in this Complaint, the Class Vehicles contained serious safety-related defects—namely, that the vehicles' engines can suddenly stall, while driving at speed, then burst into flames.

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 69

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

230.    As a direct and proximate result of Defendants' breach of implied warranties, Plaintiffs and members of the Class have been damaged in an amount to be determined at trial.

## COUNT XII
## VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT
### (Wash. Rev. Code §§ 19.86.010, *et seq.*)

231.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

232.    Plaintiffs Short and Snider bring this action on behalf of themselves and the Washington State Class.

233.    Defendants, Plaintiffs Short and Snider, and members of the Washington State Class are "persons" within the meaning of Wash. Rev. Code § 19.86.010(2).

234.    Defendants are engaged in "trade" or "commerce" within the meaning of Wash. Rev. Code § 19.86.010(2).

235.    The Washington Consumer Protection Act ("Washington CPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code § 19.86.020.

236.    In the course of their business, Defendants intentionally or negligently concealed and suppressed material facts concerning the serious and dangerous engine defects affecting the Class Vehicles. The Defendants concealed the truth about the defects and failed to make any effort to remedy them despite the fact that they knew or should have known about them for years.

237.    Plaintiffs and Class members had no way of discerning that Defendants had falsely and deceptively concealed these latent defects unless and until the defects manifested themselves by causing catastrophic and sudden engine failures, stalls, or fires. Plaintiffs and

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Class members could not unravel this deception on their own until the announcement—too late—of the inadequate proposed recalls described above. For the Hyundai Tucson, Defendants acknowledge that the defect relates to an "important safety issue," and propose a recall repair that, after six to nine years on the road, will do nothing to inspect for, repair, or compensate damage accrued as a result of a defect. For the Kia Soul, the proposed recall is also likely to be inadequate, both because it requires reprogramming an emissions component without regulatory certification and because it proposes replacing damaged engines with engines of the same defective design. Moreover, and particularly in light of Defendants' atrocious track record of remedying similar defects in GDI engines in previous recalls of other vehicles, Plaintiffs doubt that Defendants' proposed recall for the 1.6-liter Kia Soul or 2.4-liter Hyundai Tucson will actually fix the problems, and that any future recall repair—if such repairs ever become available—will remedy the problems with the 2.0-liter Kia Soul.

238.    Defendants' actions constitute a violation of the Washington CPA. Defendants knew or should have known the true nature of these vehicles as a result of pre-sale durability testing, of complaints and warranty claims by consumers to Defendants directly as well as to NHTSA, and of their previous failed recalls of related engines for similar defects.

239.    Defendants owed Plaintiffs a duty to disclose the defects and their resulting safety risks because they:

A.    Possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States with dangerous safety-related defects;

B.    Intentionally concealed the foregoing from regulators, Plaintiffs, and Class members; and/or

C.    Made incomplete representations, via earlier recalls of related vehicles for

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

similar defects, concerning the safety and presence of defects in the Class Vehicles, while actually purposefully withholding material facts from Plaintiffs that contradicted these representations.

240.    Defendants' unfair and deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety, roadworthiness, and value of the Class Vehicles.

241.    Plaintiffs and Class members have suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment of and failure to disclose material information. Plaintiffs and Class members who purchased or leased Class Vehicles would not have done so at all, or would have paid significantly less for them, if their true nature was known.

242.    Meanwhile, Defendants had an ongoing duty to all of their customers to refrain from unfair and deceptive practices under the Washington CPA in the course of their business.

243.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

244.    Pursuant to Wash. Rev. Code § 19.86.090, Plaintiffs and the Washington Class seek an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Washington CPA. Because Defendants' actions were willful and knowing, Plaintiffs' damages should be trebled. *Id*.

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 72

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## COUNT XIII
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Wash. Rev. Code §§ 62A.2-314 and 62A.2A-212)

245.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

246.    Plaintiffs Short and Snider bring this Count on behalf of themselves and the Washington State Class against all Defendants.

247.    Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Wash. Rev. Code § 62A.2-104(1) and 62A.2A-103(1)(t), and "sellers" of motor vehicles under § 2.103(a)(4).

248.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Wash. Rev. Code § 62A.2A-103(1)(p).

249.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Wash. Rev. Code §§ 62A.2-105(1) and 62A.2A-103(1)(h).

250.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Wash. Rev. Code §§ 62A.2-314 and 62A.2A-212.

251.    Defendants sold and/or leased Class Vehicles that were not in merchantable condition and/or fit for the ordinary purpose for which they were sold—namely, providing safe and reliable transportation. Defendants' breach of the implied warranty of merchantability caused damage to the Plaintiffs and Washington State Class members who purchased or leased the defective vehicles. The amount of damages due will be proven at trial.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**COUNT XIV**
**VIOLATION OF THE WEST VIRGINIA CONSUMER CREDIT AND PROTECTION ACT**
**(W. Va. Code §§ 46A-1-101, *et seq.*)**

252.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

253.     Plaintiff Twigger brings this Count on behalf of himself and the West Virginia State Class.

254.     Plaintiff Twigger, the West Virginia State Class, and Defendants are "consumers" and engaged in "consumer transaction[s]" within the meaning of West Virginia Code § 46A-6-102(2).

255.     Defendants engaged in "trade" or "commerce" as defined by West Virginia Code § 46A-6-102(6).

256.     The West Virginia Consumer Credit and Protection Act ("WVCCPA") makes it unlawful to engage in any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." W. Va. Code § 46A-6-104.

257.     Defendants violated the WVCCPA by selling Class Vehicles with defective engines, containing safety-related defects that made Class Vehicles prone to sudden catastrophic engine failure, stalling, and fires.

258.     Prior to and throughout Plaintiff Twigger's and the West Virginia Class members' purchases and leases of their Class Vehicles, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices by, among other things, representing that the Class Vehicles had characteristics, uses, benefits and qualities which they do not have; representing that the Class Vehicles are of a particular standard, quality and grade when they are

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 74

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and

2    engaging in other conduct creating a likelihood of confusion or of misunderstanding.  See WV

3    Code § 46A-6-102(7)(E), (G), (I) and (L).

4        259.    In the course of their business, Defendants willfully failed to disclose the safety-

5    related engine defects in the Class Vehicles as described above. Defendants also actively

6    concealed the true characteristics, qualities, and grades of the engines in the Class Vehicles when

7    Defendants gained this information. Accordingly, Defendants engaged in unfair and deceptive

8    acts or practices.

9        260.    Defendants knowingly misrepresented the Class Vehicles as fit for the purpose for

10   which they were intended, when, in fact, Defendants knew the Class Vehicles were unable to

11   perform as advertised.

12       261.    These acts and practices have deceived Plaintiff Twigger and the West Virginia

13   State Class. In failing to disclose the true characteristics and qualities of the Class Vehicles and

14   suppressing material facts from Plaintiff Twigger and the West Virginia State Class members,

15   Defendants breached their duties to disclose these facts.

16       262.    The omissions and acts of concealment by Defendants pertained to information

17   that was material to Plaintiff Twigger and the West Virginia State Class members, as it would

18   have been to all reasonable consumers.

19       263.    Defendants knew or should have known that their conduct violated the

20   WVCCPA.

21       264.    Plaintiff Twigger and the West Virginia State Class have suffered injury in fact

22   and actual damages as a direct and proximate result of Defendants' material omissions and

23   misrepresentations. Had Plaintiff Twigger and the West Virginia State Class known the true

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

characteristics and qualities of the engines in the Class Vehicles, they would not have purchased the Class Vehicles or would have paid substantially less for them.  In satisfaction of WV Code § 46A-6-106(c), Plaintiff Twigger provided Defendant Kia with notice of the engine failure and the resultant engine fire that destroyed his vehicle, but Defendant Kia failed to offer any redress or compensation. In addition and in the alternative, the notice and cure letter contemplated by WV Code § 46A-6-106(c) would have been futile under the circumstances because Plaintiff Twigger's vehicle was irreparably destroyed by the engine fire, making any cure impossible.

265.    Plaintiff Twigger and the West Virginia State Class have suffered actual damages and ascertainable loss as a direct and proximate result of the Defendants' violations of the WVCCPA, including but not limited to diminished and or complete lost value for the Class Vehicles they purchased or leased; lost or diminished use, enjoyment and utility of such vehicles; and annoyance, aggravation and inconvenience resulting from Defendants' violations of the WVCCPA.

266.    Pursuant to WV Code § 46A-6-106(a), for each violation of the WVCCPA, Plaintiff Twigger and the West Virginia State Class seek the actual damages resulting from each such violation, or $200, whichever is greater, together with equitable relief as determined by the Court to be proper. Specifically, Plaintiff Twigger and the West Virginia State Class ask the Court to enjoin Defendants from further unfair or deceptive acts or practices; to order that Defendants return all amounts that Plaintiff Twigger and the West Virginia State Class paid to Defendants for purchase and/or lease of the Class Vehicles; to award attorneys' fees and costs against Defendants; to assess punitive damages as the Court finds just and proper to punish Defendants for their willful, intentional and malicious plan to deceive, defraud and injure

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Plaintiff Twigger and the West Virginia State Class; and to order any other just and proper relief available under the WVCCPA.

## COUNT XV
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (W. Va. Code §§ 46-2-314 and 46-2A-212)

267.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

268.    Plaintiff Twigger brings this Count on behalf of himself and the West Virginia State Class.

269.    Defendants were at all relevant times "merchants" with respect to motor vehicles under W. Va. Code §§ 46-2-104(1) and 46-2A-103(1)(t), and "sellers" of motor vehicles under § 46-2-103(1)(d).

270.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under W. Va. Code § 46-2A-103(1)(p).

271.    The Class Vehicles are and were at all relevant times "goods" within the meaning of W. Va. Code §§ 46-2-105(1) and 46-2A-103(1)(h).

272.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to W. Va. Code §§ 46-2-314 and 46-2A-212.

273.    Defendants sold and/or leased Class Vehicles that were not in merchantable condition and/or fit for the ordinary purpose for which they were sold—namely, providing safe and reliable transportation, free from the risk of sudden engine stalling and fire.

274.    Defendants' breaches of the implied warranty of merchantability caused damage to the West Virginia State Class. The amount of damages due will be proven at trial.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the members of the Nationwide Class and State Classes, respectfully request that the Court grant certification of the proposed Nationwide Class and State Classes, including the appointment of Plaintiffs as named representatives thereof, the appointment of the undersigned as Class Counsel, and the designation of any appropriate issue classes and/or subclasses, under the applicable provisions of Fed. R. Civ. P. 23, and that the Court enter judgment in their favor and against Defendants, as follows:

A.      A declaration that any applicable statutes of limitations are tolled due to the fraudulent concealment alleged in this Complaint, and that Defendants are estopped from relying on any statutes of limitation in defense;

B.      An order enjoining Defendants from continuing the unlawful, unfair, and fraudulent business practices alleged herein;

C.      Appropriate injunctive and equitable relief requiring Defendants to repair and/or buy back all Class Vehicles, and to fully reimburse and make whole all Class members for all costs and economic losses associated therewith;

D.      Damages, including actual, compensatory, restitution, incidental, consequential, costs, multiple or punitive under applicable law, and disgorgement in an amount to be determined at trial;

E.      A determination that Defendants are financially responsible for all Class notice and administration of Class relief, including but not limited to accurate consumer-facing information about the defects at issue;

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    F.    An order requiring Defendants to pay both pre- and post-judgment interest on any

2  amounts awarded;

3    G.    An award of costs and attorneys' fees;

4    H.    Leave to amend this Complaint to conform to the evidence produced in discovery

5
6  and at trial; and

7    I.    Such other or further relief as the Court may deem appropriate, just, and

8  equitable.

9              IX.    DEMAND FOR JURY TRIAL

10    Plaintiffs hereby demand a jury trial for all claims so triable.

11

12     DATED this 29th day of August, 2019.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

KELLER ROHRBACK L.L.P.

By *s/Lynn Lincoln Sarko*
By *s/Gretchen Freeman Cappio*
By *s/Ryan McDevitt*
By *s/Maxwell H. Goins*
    Lynn Lincoln Sarko #16569
    Gretchen Freeman Cappio #29576
    Ryan McDevitt #43305
    Maxwell Goins #54130
    1201 Third Avenue, Suite 3200
    Seattle, WA 98101-3052
    (206) 623-1900
    Fax (206) 623-3384
    lsarko@kellerrohrback.com
    gcappio@kellerrohrback.com
    rmcdevitt@kellerrohrback.com
    mgoins@kellerrohrback.com

    Benjamin L. Bailey, *pro hac vice*
    Jonathan D. Boggs, *pro hac vice*
    BAILEY GLASSER LLP
    209 Capitol Street
    Charleston, WV 25301
    (304) 345-6555
    Fax (304) 342-1110
    bbailey@baileyglasser.com
    jboggs@baileyglasser.com

    *Attorneys for Plaintiffs*

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 80

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## CERTIFICATE OF SERVICE

I, Ryan McDevitt, hereby certify that on August 29, 2019, I electronically filed the foregoing with the Clerk of the United States District Court for the Western District of Washington using the CM/ECF system, which shall send electronic notification to all counsel of record.


*/s/ Ryan McDevitt*
Ryan McDevitt

AMENDED CONSOLIDATED COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318-JLR) - 81

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384